Khalid KHAN, Trustee, Appellant,

v.

GBAK PROPERTIES, INC., Parkway Crossing, LLC, Ray Lotfi, and Ellie Lotfi, Appellees.

No. 01–10–00238–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 29, 2012.

James A. Dunn, Dunn, Neal & Gerger, L.L.P., Houston, TX, for Appellant.

Ben A. Baring Jr., Paul J. McConnell, De Lange, Hudspeth, McConnell & Tibbets, L.L.P., Casey Jon Lambright, Lambright & Associates, Houston, TX, for Appellees.

Panel consists of Justices KEYES, HIGLEY, and YATES.*

## OPINION

LAURA CARTER HIGLEY, Justice.

Appellant, Khalid Khan, appeals the trial court's grants of summary judgment in favor of appellees, GBAK Properties, Inc., Parkway Crossing, LLC, Ray Lofti, and Ellie Lofti. In seven points of error, Khan argues the trial court erred in granting summary judgment because (1) there is a fact issue concerning whether Khan's foreclosure action is barred by the statute of limitations; (2) there is a fact issue concerning whether Khan's claims against the Loftis are barred by the statute of limitations; and (3) there is some evidence that the Loftis tortiously interfered with Khan's contract in their individual capacity.

We affirm, in part, and reverse and remand, in part.

## Background

On April 23, 1996, GBAK purchased certain commercial property located on Crabb River Road in Richmond, Texas (the "Crabb River Property"). At the time, Ghulam Bombaywala was the president and director of GBAK. In order to purchase the property, GBAK executed a Note with Bank of Texas, known at the time as Citizen's National Bank of Texas. Under the terms of the Note, GBAK was to make monthly installment payments to Bank of Texas for a period of 10 years— that is, until April 23, 2006. The interest rate on the Note was 10.25% for the first three years with adjustments on each three-year anniversary. Upon default, Bank of Texas had the option to accelerate the Note, making the entire amount due immediately. The Note further provided that Bank of Texas could charge the maximum interest allowable by law upon acceleration. The Note was secured by a Deed of Trust, dated April 23, 1996, on the Crabb River Property and an Assignment of Rents for the property.

In August 2002, GBAK sought bankruptcy protection. While GBAK was in bankruptcy, Bank of Texas filed a motion for relief from the stay, seeking permission to foreclose on the property. Bank of Texas argued—and GBAK agreed—that the Note had been accelerated prior to the bankruptcy. The bankruptcy court subsequently entered an Agreed Order requiring GBAK to make monthly payments to Bank of Texas as adequate protection of its interest in the property during the pendency of the bankruptcy stay.

GBAK made the first of these payments under the Agreed Order to Bank of Texas in October 2002. The bankruptcy proceeding was dismissed with prejudice in January 2003. Subsequently, GBAK made four

* The Honorable Leslie Brock Yates, former Justice, Court of Appeals, Fourteenth District of Texas at Houston, participating by assignment.

more payments to Bank of Texas through April 2003, and Bank of Texas accepted the payments. There is no evidence in the record that any other payments were made on the Note after these four payments.

Concerned that Bank of Texas might seek to accelerate the Note again, Bombaywala approached Khan about purchasing the Note, Deed of Trust, and Assignment of Rents from Bank of Texas. Khan expressed an interest.

On July 1, 2003, Khan paid Bank of Texas an unstated amount, and Bank of Texas assigned the Note, Deed of Trust, and Assignment of Rents to Khan. When it assigned the Note, Deed of Trust, and Assignment of Rents to Khan, Bank of Texas represented that the interest per diem on the Note was $61.73. This was consistent with the regular rate of interest that applied to the Note under its original terms.

Khan spoke multiple times with Bombaywala concerning the Note both before and after the assignment. Before Khan's purchase of the note and assignment of the note to Khan, Bombaywala told Khan he was looking for someone to purchase the note who would not seek to accelerate it, and Khan agreed that that was acceptable to him. After he acquired the Note, Khan orally "agreed to treat the Note according to the original terms of the Note."

In November 2003, Ellie Lofti purchased the Crabb River Property and received a tax deed after a default judgment was entered against GBAK for failing to pay taxes to Alief Independent School District. In March 2004, GBAK and Khan filed suit seeking to set aside the default judgment and subsequent tax sale and were ultimately successful. In March 2005, Ellie Lofti paid GBAK and Khan the rents she had collected from the Crabb River Property tenants.

On January 20, 2006, Bank of Texas issued releases of the Deed of Trust and Assignment of Rents that it had already assigned to Khan. These documents were filed in the county property records.

On January 30, 2006, Peter Pratt, a court appointed receiver and special master in a court-ordered receivership of GBAK, conveyed the interest held by GBAK in the Crabb River Property to Parkway Crossing, a business entity created by the Loftis. On May 12, 2006, Parkway Crossing executed a deed of trust, note, and assignment of rents to Republic National Bank for the Crabb River Property. The documents were signed by Ray Lofti as president of Parkway Crossing. In this deed of trust, Ray Lofti represented that the lien was a valid first lien.

On January 17, 2009, Khan sent GBAK a demand for all amounts owing to him. On May 12, 2009, Khan sent GBAK a notice of foreclosure on the property.

In June 2009, Bank of Texas executed an affidavit stating that it had no authority in January 2006 to issue the releases and that they were invalid and ineffective because the relevant contracts had been previously conveyed to Khan. Therefore, no one could rely on them as releasing the Crabb River Property from the lien of the Deed of Trust and Assignment of Rents held by Khan.

This suit ensued. Ultimately, Khan sought a judicial foreclosure on the Crabb River Property, and GBAK and Parkway Crossing asserted that the foreclosure action was barred by the statute of limitations. GBAK and Parkway Crossing brought a traditional motion for summary judgment on this ground, arguing that Bank of Texas accelerated the Note prior to August 5, 2002, which started the running of limitations. Therefore, they argued, limitations ran on the note holder's

ability to foreclose on the Note no later than August 5, 2006.

Khan responded that any prior acceleration of the Note was abandoned by the parties and that each note holder—Bank of Texas prior to July 1, 2003 and Khan after July 1, 2003—had agreed to reinstatement of the Note according to its original terms. The trial court granted GBAK and Parkway Crossing's motion for summary judgment, dismissing all claims against them.

Khan also brought a claim of tortious interference with existing contract against the Loftis in their individual capacity. The Loftis brought a traditional motion for summary judgment arguing that Khan's claims accrued no later than 2006 and were barred by the statute of limitations. Their motion also included a no-evidence motion for summary judgment, arguing that there was no evidence that the Loftis, in their individual capacity, tortiously interfered with Khan's existing contracts. The trial court granted the Loftis' motion for summary judgment, dismissing all claims against them.

## Standard of Review

The summary-judgment movant must conclusively establish its right to judgment as a matter of law. *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986). Because summary judgment is a question of law, we review a trial court's summary judgment decision de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex.2009).

To prevail on a "traditional" summary-judgment motion, asserted under Rule 166a(c), a movant must prove that there is no genuine issue regarding any material fact and that it is entitled to judgment as a matter of law. *See* TEX.R. CIV. P. 166a(c); *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex.2004). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex.2005). A defendant moving for traditional summary judgment must either (1) disprove at least one element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of an affirmative defense to rebut the plaintiff's cause. *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997).

It is an affirmative defense to assert that a claim is barred by the statute of limitations. TEX.R. CIV. P. 94. Accordingly, the party moving for summary judgment based on the statute of limitations carries the burden of establishing as a matter of law that the limitations period had expired on the relevant claims. *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex.1990). This includes establishing when the causes of action accrued. *Id.*

After an adequate time for discovery, a party may move for no-evidence summary judgment on the ground that no evidence exists of one or more essential elements of a claim on which the adverse party bears the burden of proof at trial. TEX.R. CIV. P. 166a(i); *Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 834 (Tex.App.-Houston [1st Dist.] 1999, no pet.). The burden then shifts to the nonmovant to produce evidence raising a genuine issue of material fact on the elements specified in the motion. TEX.R. CIV. P. 166a(i); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex.2006). The trial court must grant the motion unless the nonmovant presents more than a scintilla of evidence raising a fact issue on the challenged elements. *Flameout Design*, 994 S.W.2d at 834; *see also Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997) (holding "[m]ore than a scintilla of evidence exists when the evidence supporting the finding,

as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions").

To determine if there is a fact issue, we review the evidence in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not. *See Fielding,* 289 S.W.3d at 848 (citing *City of Keller,* 168 S.W.3d at 827). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Sw. Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex.2002). When the trial court's summary judgment order does not state the basis for the trial court's decision, we must uphold the order if any of the theories advanced in the motion are meritorious. *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 216 (Tex.2003).

### Limitations on Khan's Foreclosure Action

In his first five issues, Khan asserts that the trial court erred by granting summary judgment in favor of GBAK and Parkway Crossing and against Khan on the grounds that his foreclosure action was barred by the statute of limitations.

"A sale of real property under a power of sale in a mortgage or deed of trust that creates a real property lien must be made not later than four years after the day the cause of action accrues." TEX. CIV. PRAC. & REM.CODE ANN. § 16.035(b) (Vernon 2002). "If a series of notes or obligations or a note or obligation payable in installments is secured by a real property lien, the four-year limitations period does not begin to run until the maturity date of the last note, obligation, or installment." *Id.* § 16.035(e). "When this four-year period expires, the real-property lien and the power of sale to enforce the lien become void." *Holy Cross Church of God in*

*Christ v. Wolf,* 44 S.W.3d 562, 567 (Tex. 2001).

If a note secured by a real property lien is accelerated pursuant to the terms of the note, then the date of accrual becomes the date the note was accelerated. *Burney v. Citigroup Global Markets Realty Corp.,* 244 S.W.3d 900, 903 (Tex.App.-Dallas 2008, no pet.). If, under the terms of the note, the acceleration is optional at the election of the note holder, the action accrues only when the holder exercises its option to accelerate. *Holy Cross,* 44 S.W.3d at 566.

A note holder who exercises its option to accelerate may "abandon acceleration if the holder continues to accept payments without exacting any remedies available to it upon declared maturity." *Id.* at 566–67. In addition, acceleration can be abandoned by agreement or other action of the parties. *Id.* at 567 (citing *San Antonio Real–Estate, Bldg. & Loan Ass'n v. Stewart,* 94 Tex. 441, 61 S.W. 386, 388 (1901)). Abandonment of acceleration has the effect of restoring the contract to its original condition, including restoring the note's original maturity date. *Id.* (citing *San Antonio Real–Estate,* 61 S.W. at 388; *Denbina v. City of Hurst,* 516 S.W.2d 460, 463 (Tex.Civ.App.-Tyler 1974, no writ)).

The Note in question contains an optional acceleration clause. It is undisputed by the parties that, when it was the note holder, Bank of Texas exercised its option to accelerate the Note. While the exact date of acceleration does not appear in the record, the summary judgment evidence shows that acceleration occurred prior to the date that GBAK filed for bankruptcy: August 5, 2002. GBAK and Parkway Crossing argue that neither Bank of Texas nor Khan abandoned acceleration and, accordingly, Khan's option to foreclose on

the Crabb River Property expired some time prior to August 5, 2006. Khan argues that both he and Bank of Texas abandoned the acceleration and, accordingly, his option to foreclose on the property did not expire until four years after the date the last payment was due on the Note—that is, until four years after April 23, 2006. We must determine, then, whether the acceleration of the Note was ever abandoned.[1]

As an initial matter, we must address the issue of what the evidentiary burden was for establishing abandonment of acceleration. GBAK and Parkway Crossing argue that it was Khan's burden to establish by "conclusive evidence" that the acceleration had been abandoned. We disagree.

Typically, the party moving for summary judgment bears the burden of proving, as a matter of law, that it is entitled to summary judgment. *See Burns,* 786 S.W.2d at 267 (holding movant seeking summary judgment on statute of limitations carries additional burden of negating discovery rule, if raised). Even in circumstances where the burden shifts to the nonmovant, though, the burden placed on the nonmovant is to "present evidence sufficient to raise a fact issue." *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995). The nonmovant is not required to meet its burden at trial in order to avoid summary judgment. *See id.* Accordingly, even if it had been Khan's burden of proof to establish that the acceleration had been abandoned, Khan was not required to establish "conclusive evidence" of abandonment.

In August 2002, GBAK sought bankruptcy protection. While GBAK was in bankruptcy, Bank of Texas filed a motion for relief from the stay, seeking permission to foreclose on the property. Bank of Texas argued—and GBAK agreed—that the Note had been accelerated prior to the bankruptcy. The bankruptcy court subsequently entered an Agreed Order requiring GBAK to make monthly payments to Bank of Texas as adequate protection of its interest in the property during the pendency of the bankruptcy stay.

GBAK made the first of these payments to Bank of Texas in October 2002. On January 2003, the bankruptcy proceeding was dismissed with prejudice. Subsequently, GBAK made four more payments to Bank of Texas through April 2003, and Bank of Texas accepted the payments.

GBAK and Parkway Crossing argue that Bank of Texas's acceptance of GBAK's payments did not establish that Bank of Texas had abandoned the acceleration of the Note because the payments were made pursuant to a bankruptcy "adequate protection" agreement, citing *Thompson v. Chrysler First Business Credit Corp.,* 840 S.W.2d 25 (Tex.App.-Dallas 1992, no writ). In *Thompson,* the guarantor of the note argued that a prior acceleration had been abandoned—and, accordingly, the note holder was required to "re-accelerate" before foreclosing—because the note holder had accepted adequate protection payments while the obligor was in bankruptcy. *Id.* at 30. The Dallas Court of Appeals pointed out that the obligor stopped making the payments, the bankruptcy was dismissed, and the note holder promptly commenced foreclo-

---

1. Some of the case law simultaneously refers to both waiver and abandonment of an acceleration. *See, e.g., City Nat'l Bank of Corpus Christi v. Pope,* 260 S.W. 903, 905 (Tex.Civ. App.-San Antonio 1924, no writ). GBAK and Parkway Crossing refer to waiver of abandon-

ment. The Texas Supreme Court has recently framed it as abandonment of acceleration. *Holy Cross Church of God in Christ v. Wolf,* 44 S.W.3d 562, 566–67 (Tex.2001). Accordingly, we follow the terminology used by the Texas Supreme Court.

sure procedures. *Id.* at 31. The court held that evidence of adequate protection payments made in bankruptcy does not raise a fact issue concerning abandonment of acceleration. *Id.*

██ Khan points out, however, that four of the payments made by GBAK occurred after the bankruptcy was dismissed. An order of dismissal in a bankruptcy proceeding has the effect of returning the parties to the status quo at the time the bankruptcy was commenced. *See* 11 U.S.C. § 349(b)(3) (2008). "Unless the court indicates otherwise, the general effect of an order of dismissal is to restore the status quo ante; it is as though the bankruptcy case had never been brought." *In re Keener,* 268 B.R. 912, 920 (Bankr. N.D.Tex.2001).

Once GBAK's bankruptcy was dismissed, Bank of Texas no longer needed adequate protection from the stay, as it no longer existed. It follows, then, that the order of adequate protection no longer applied after the bankruptcy was dismissed. *See id.* Nevertheless, GBAK made four additional payments after bankruptcy was dismissed and Bank of Texas accepted each of these payments "without exacting any remedies available to it." *See Holy Cross,* 44 S.W.3d at 566–67.

Additionally, when it assigned the Note, Deed of Trust, and Assignment of Rents to Khan, Bank of Texas represented that the interest per diem on the Note was $61.73. This is consistent with the regular rate of interest that applied to the Note. The Note provided, however, that Bank of Texas could charge the maximum interest allowable by law upon acceleration. The summary judgment evidence established that this would have been represented as interest per diem of $164.63.[2]

Finally, Khan spoke multiple times with Bombaywala—the president and director of GBAK at the time—concerning the Note both before and after the assignment. Before the assignment, Bombaywala told Khan he was looking for someone who would not seek to accelerate the Note and Khan agreed that was acceptable to him. After he acquired the Note, Khan orally "agreed to treat the Note according to the original terms of the Note."

Parkway Crossing argued in its reply to Khan's response to the motion for summary judgment that these conversations were ineffective to abandon the acceleration because any agreement between Khan and GBAK was required to be in writing, citing Tex. Civ. Prac. & Rem.Code Ann. § 16.036 (Vernon 2002). Section 16.035 of the Texas Civil Practice and Remedies Code provides that limitations begin to run on the date of accrual and that accrual occurs for a note with installment payments on the maturity date of the last installment. *Id.* § 16.035(e). Section 16.036 provides that the statute of limitations period can be suspended through a written agreement. *Id.* § 16.036(a). Suspension of the statute of limitations does

---

**2.** GBAK and Parkway Crossing argue that, because this increased interest rate was elective, the representation of the per diem interest made by Bank of Texas in the assignment is not proof that the acceleration had been abandoned. It is true that this representation by Bank of Texas is subject to at least two inferences: (1) that Bank of Texas no longer considered the Note to be accelerated or (2) that Bank of Texas, for an unknown reason, voluntarily chose to forego the option of charging a higher rate of interest. In reviewing an appeal of a summary judgment order, however, we are charged with indulging every reasonable inference in favor of the nonmovant and resolving all doubts in favor of the nonmovant. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,* 289 S.W.3d 844, 848 (Tex.2009). Because it is a reasonable inference, we must presume that Bank of Texas no longer considered the Note to be accelerated.

not concern the acceleration of a note or the abandonment of that acceleration. Accordingly, the requirement of a written agreement under section 16.036 does not apply to our analysis.

It has been the law of Texas at least since 1901 that the parties can abandon acceleration and restore the contract to its original terms by the parties' agreement or actions. *San Antonio Real–Estate*, 61 S.W. at 388; *see also Holy Cross*, 44 S.W.3d at 567 (citing *San Antonio Real–Estate* for same). As Khan points out, if an agreement abandoning acceleration had to be in writing, then the parties would not be able to do it by their actions alone, as *San Antonio Real–Estate* holds.

Bank of Texas accepted payment on the Note from GBAK after acceleration without exacting any remedies available to it. When it assigned the Note to Khan, Bank of Texas represented that the interest per diem was consistent with the interest rate charged when the Note was not accelerated. Finally, Khan and GBAK agreed, after the assignment of the Note to Khan, to treat the Note according to the Note's original terms. Viewing the summary judgment evidence in the light most favorable to Khan, as we must, we hold that there is a material fact issue as to the abandonment of acceleration of the Note.[3]

We sustain Khan's fourth issue.[4]

### Khan's Claims against Ray and Ellie Lofti

In his seventh issue, Khan argues that the trial court erred by granting summary judgment against him on his claim of tortious interference with his existing contracts brought against the Loftis.

While GBAK and Parkway Crossing's motion for summary judgment was pending, the Loftis brought a traditional motion for summary judgment, arguing Khan's pleadings established that limitations had passed on his claims for tortious interference against them. They also brought a no-evidence motion for summary judgment, arguing that Khan could not establish that the Loftis had tortiously interfered with any of Khan's contracts in their individual capacity. The trial court did not state on which ground it was granting summary judgment. Accordingly, we must affirm if one of the stated grounds is meritorious. *Knott*, 128 S.W.3d at 216.

### A. Statute of Limitations

■ We consider first whether the statute of limitations had expired at the time Khan brought his claim against the Loftis for tortious interference with existing contract. Tortious interference with existing contract has a two-year limitations period. *First Nat'l Bank of Eagle Pass v. Levine*, 721 S.W.2d 287, 289 (Tex.1986).

The Loftis did not attach any evidence in support of their motion for summary judgment on their affirmative defense of expiration of the limitations period. Instead, they rely on Khan's petition to establish their affirmative defense.

■ Generally, a party's pleadings do not constitute summary-judgment evi-

---

3. We note that, in his sixth issue, Khan argues that the statute of limitations was also tolled due to other ongoing litigation concerning ownership of the property. *See Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 157 (Tex.1991) (holding tolling applies during pendency of legal proceedings that prevent party from exercising its legal rights). We do

not need to reach this issue, however, because it would not result in greater relief. *See* Tex. R.App. P. 47.1.

4. Because Khan's first, second, third, and fifth issues are redundant of his fourth issue, we do not need to separately rule on them. *See id.*

dence, even if sworn or verified. *Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex.1995). A party may plead himself out of court, however, when he pleads facts which affirmatively negate his cause of action. *Tex. Dep't of Corr. v. Herring*, 513 S.W.2d 6, 9 (Tex.1974). In that case, pleadings may be used as summary judgment evidence when they contain statements rising to the level of judicially admitting a fact or conclusion which is directly adverse to that party's theory or defense of recovery. *Judwin Props., Inc. v. Griggs and Harrison, P.C.*, 911 S.W.2d 498, 504 (Tex.App.-Houston [1st Dist.] 1995, no writ); *Highlands Ins. Co. v. Currey*, 773 S.W.2d 750, 755 (Tex. App.-Houston [14th Dist.] 1989, writ denied).

 "A judicial admission results when a party makes a statement of fact which conclusively disproves a right of recovery or defense he currently asserts." *Seminole Pipeline Co. v. Broad Leaf Partners, Inc.*, 979 S.W.2d 730, 740 (Tex.App.-Houston [14th Dist.] 1998, no pet.). The elements for establishing that a statement is a judicial admission are (1) the statement must be made in the course of a judicial proceeding; (2) it must be contrary to an essential fact or defense asserted by the party; (3) it must be deliberate, clear, and unequivocal; (4) it cannot be destructive of the opposing party's theory of recovery or defense; and (5) enforcing the statement as a judicial admission would be consistent with public policy. *Kaplan v. Kaplan*, 129 S.W.3d 666, 669 (Tex.App.-Fort Worth 2004, pet. denied). The public policy concerning judicial admissions is that it would be unjust to permit a party to recover after he has sworn himself out of court by a clear, unequivocal statement. *Id.*

Khan brought his third-party claims against the Loftis on July 9, 2009. We must review Khan's live petition, then, to determine whether it contains judicial admissions establishing as a matter of law that all of his claims accrued before July 9, 2007.

The Loftis' motion for summary judgment does not specify which portions of Khan's petition they believe constitute judicial admissions. Instead, they only generally assert that, according to Khan's petition, all acts they allegedly performed "were performed no later than 2006." This is unsupported by a reading of the petition. Khan's petition alleges that, in early 2006, the Loftis obtained from Bank of Texas releases of the Deed of Trust and the Assignment of Rents that had previously been conveyed to Khan. Khan's petition further asserts that subsequently—without providing a date—Ray Lofti signed documents granting a deed of trust and an assignment of rents to a different lender. These documents were filed in the county property records. The petition asserts that Ray Lofti represented to the other lender that the Crabb River Property was free of liens. Finally, the petition asserts that Ray and Ellie Lofti have interfered with Khan's rights to collect rents from the tenants of the property, again without providing a date.

 Texas follows a "fair notice" standard of pleading. *Low v. Henry*, 221 S.W.3d 609, 612 (Tex.2007); *see also* Tex.R. Civ. P. 45(b), 47(a). Under this standard, a plaintiff's pleading is only required to "give a short statement of the cause of action sufficient to give the opposing party fair notice of the claim involved." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 230 (Tex.2004). A plaintiff is not required to "set out in his pleadings the evidence upon which he relies to establish his asserted cause of action." *Id.* Accordingly, Khan's failure to supply specific dates in his petition for the wrongful

actions allegedly performed by the Loftis is not fatal to his claims, nor does it establish a judicial admission of the dates the actions were performed.

In their brief on appeal, the Loftis attempt to point to other evidence in the appellate record to establish that the actions Khan complains of could not have occurred after 2006. The Loftis' ground for summary judgment was that Khan had judicially admitted in his petition that the limitations period on his claims against them had expired. Other evidence in the appellate record is not relevant to this inquiry. *See State Farm Lloyds v. Page,* 315 S.W.3d 525, 532 (Tex.2010) (holding "[s]ummary judgment may not be affirmed on appeal on a ground not presented to the trial court in the motion").

We hold that Khan's petition does not judicially admit as a matter of law that all of his claims against the Loftis accrued before July 9, 2007.

### B. Proof of the Elements of Tortious Interference with Existing Contract

■ We next consider whether there is any summary judgment evidence that the Loftis interfered with Khan's contracts in their individual capacity. The elements of a tortious interference with existing contract claim are (1) the plaintiff had a contract subject to interference; (2) the defendant willfully and intentionally interfered with that contract; (3) the interference proximately caused the plaintiff's damage; and (4) the plaintiff incurred actual damage or loss. *Plotkin v. Joekel,* 304 S.W.3d 455, 484 (Tex.App.-Houston [1st Dist.] 2009, pet. denied).

On appeal, the Loftis do not dispute that Khan had contracts subject to interference. Khan asserts that the contracts subject to interference were the Note, Deed of Trust, and Assignment of Rents. The Loftis do no dispute this assertion.

We must decide, then, if there is sufficient evidence of the remaining elements. *See Flameout Design,* 994 S.W.2d at 834 (holding nonmovant bears burden of presenting more than scintilla of evidence on challenged elements). Because different facts apply to Ray and Ellie Lofti, we review the claims brought against them separately.

#### 1. Ray Lofti

■ Khan's response to the Loftis' motion for summary judgment focuses on the Assignment of Rents. The Assignment of Rents vested "absolute, unconditional and immediately effective" title to all rents in the Crabb River Property in Bank of Texas. That vested title was subsequently transferred to Khan. Under the terms of the agreement, title to the rents is held by Khan until GBAK had fully performed on all obligations under the Note, Deed of Trust, and Assignment of Rents, including payment in full of the amounts owed under the Note.

In May 2006, Parkway Crossing issued a deed of trust, note, and assignment of rents to Republic National Bank for the Crabb River Property. The assignment of rents to Republic National Bank represented that Parkway Crossing was "the owner in fee simple" of the Crabb River Property. Under this agreement, Parkway Crossing "[sold], transfer[red] and set[ ] over" to Republic National Bank all "rents, income, receipts, revenues, issues and profits" from the property. Additionally, Parkway Crossing represented that "no person, firm or corporation other than [Parkway Crossing] has or will have any right, title or interest in or to the" rent. The assignment of rents was signed by Ray Lofti as president of Parkway Crossing.

In his affidavit attached to the response to the Loftis' motion for summary judgment, Khan represented that he has not

received rents on the Crabb River Property since at least June 1, 2006. He also represented that he has been prevented from collecting rents by the Loftis.

In his brief, Ray Lofti argues that the agreements between Parkway Crossing and Republic National Bank were signed by him in his capacity as president of Parkway Crossing. He further argues that there is no evidence that he personally, in his individual capacity, performed any of the acts complained of by Khan. We disagree.

■ It is a longstanding rule in Texas that "a corporate agent is personally liable for his own fraudulent or tortious acts." *Miller v. Keyser*, 90 S.W.3d 712, 717 (Tex. 2002). If a corporate agent directs or participates in a tort during his employment, he faces personal liability for the tortious act. *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 375 (Tex.1984). Accordingly, regardless of whether Ray Lofti performed these acts in his capacity as president, he can still face liability for those acts if they prove to be tortious. *See id.; Miller*, 90 S.W.3d at 717.

Ray Lofti cites two Texas Supreme Court cases, suggesting that they stand for the opposite proposition: that he can face liability only if he had an independent duty and acted solely in his own interests. In the first case, the Texas Supreme Court considered whether a corporate agent could be held liable for negligence. *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996). The court held "individual liability [for negligence claims] arises only when the officer or agent owes an independent duty of reasonable care to the injured party apart from the employer's duty." *Id.*

In the second case, the issue concerned whether a claim of tortious interference with existing contract could be brought against a corporate officer when the company was one of the contracting parties.

*Powell Indus., Inc. v. Allen,* 985 S.W.2d 455, 456 (Tex.1998). In *Powell Industries,* Allen sued Powell—president and CEO of Powell Industries—individually for tortious interference with Allen's contract with Powell Industries. *Id.* The court recognized a particular difficulty when "the defendant is both a corporate agent and the third party who allegedly induces the corporation's breach." *Id.* at 456–57 (citing *Holloway v. Skinner,* 898 S.W.2d 793, 796 (Tex.1995)). Acknowledging the unique situation, the court held, "The plaintiff must prove that the agent acted willfully and intentionally to serve the agent's personal interests at the corporation's expense." *Id.* at 457.

While both of these cases are exceptions to the general rule that a corporate agent faces personal liability for tortious acts he directed or participated in, neither of these cases is applicable to the facts of this case. Khan did not sue Ray Lofti for negligence. Nor was Parkway Crossing, the company on whose behalf Ray Lofti purported to act, a party to the contracts with which Khan asserts have been interfered. The contracts were, instead, between Khan and GBAK. We hold that Ray Lofti faces individual liability for the torts he directed or participated in regardless of whether they were performed in his capacity as president of Parkway Crossing.

■ Ray Lofti further argues that, even if there is proof he is individually liable for tortious interference with existing contract, there is no proof that Khan has been injured by the interference. We disagree.

■ To establish tortious interference with existing contract, a plaintiff is not limited to showing the contract was actually breached. *Hughes v. Houston Nw. Med. Or., Inc.,* 680 S.W.2d 838, 842 (Tex. App.-Houston [1st Dist.] 1984, writ ref'd

n.r.e.). Any interference that makes performance more burdensome or difficult or of less or no value to the one entitled to performance is actionable. *Id.; see also Tippett v. Hart,* 497 S.W.2d 606, 610 (Tex. Civ.App.-Amarillo 1973), *writ ref'd n.r.e. per curiam,* 501 S.W.2d 874 (Tex.1973) (holding claim actionable for any act "which retards, makes more difficult or prevents performance").

The evidence shows that Ray Lofti, through Parkway Crossing, purported to assign all rents in the Crabb River Property to Republic National Bank. This agreement was entered into in May 2006. Khan stated in his affidavit that he had not received any rents since at least June 2006. The existence of a second competing claim over the rents—regardless of whether this second claim later proves void—makes performance under Khan's contract more difficult and reduces the value of that contract. We hold there was sufficient summary-judgment evidence to support a claim of tortious interference with existing contract against Ray Lofti.

### 2. Ellie Lofti

■ In contrast to Ray Lofti, there is no summary judgment evidence that Ellie Lofti directed or participated in tortious interference with existing contract either in her capacity as an agent of Parkway Crossing or individually. *See Leyendecker & Assocs.,* 683 S.W.2d at 375. Khan asserts in his affidavit that, starting in 2004, Ellie Lofti began collecting rent from the Crabb River Property. She began collecting rent after she obtained the property from a tax sale after a default judgment was entered against GBAK for failing to pay taxes to Alief Independent School District. In March 2004, GBAK and Khan filed suit seeking to set aside the default judgment and subsequent tax sale and were ultimately successful. Khan concedes in his affidavit and supporting evidence, however, that Ellie Lofti subsequently returned all rents collected by her in March 2005. He does not identify any controversy that was not resolved by the earlier judgment and return of all rents collected that would support his claim for tortious interference. *See Parkway Co. v. Woodruff* 901 S.W.2d 434, 441 (Tex.1995) (holding "Texas law does not permit double recovery").

Ellie Lofti's name does not otherwise appear in the summary judgment evidence other than the conclusory statement in Khan's affidavit that she has "prevented me from collecting rents from tenants and from exercising the rights given me by the security documents." *See Ryland Group Inc. v. Hood,* 924 S.W.2d 120, 122 (Tex. 1996) (holding conclusory affidavits are not sufficient to raise fact issue); *Ramirez v. Transcon. Ins. Co.,* 881 S.W.2d 818, 829 (Tex.App.-Houston [14th Dist.] 1994, writ denied) (holding objection to conclusory affidavits may be raised for first time on appeal).

Nor is there any evidence that would support an inference that Ellie Lofti directed or participated in a tort. Khan asserts that Ellie Lofti interfered with his contracts by (1) obtaining and filing an unauthorized release of Deed of Trust and release of Assignment of Rents from Bank of Texas after the deed had been assigned to Khan and (2) encumbering the property with a deed of trust and absolute assignment of rents in favor of Republic National Bank and representing the lien was the first lien.

For the release of Deed of Trust and release of assigned rents from Bank of Texas, there is evidence that these releases were obtained after they had been transferred to Khan. There is also evidence that they were filed in the county property records. There is no evidence,

however, of who obtained the improper releases from Bank of Texas or who filed them in the county property records. Without evidence of who did these acts, there is no summary judgment evidence that they were done by Ellie Lofti.

For the deed of trust and assignment of rents to Republic National Bank, there is evidence that the deed of trust and assignment of rents were executed and filed in the county property records. Both documents show, however, that this was done by Ray Lofti in his capacity as president of Parkway Crossing. There is no suggestion that Ellie Lofti participated in the execution or performance of these contracts. We hold the trial court did not err in granting summary judgment in favor of Ellie Lofti on all claims asserted by Khan.

We sustain Khan's seventh issue as it applies to Ray Lofti and overrule it as it applies to Ellie Lofti.

## Conclusion

We affirm the trial court's grant of summary judgment on all claims between Khan and Ellie Lofti, individually. We reverse the trial court's grant of summary judgment on all claims between Khan, GBAK Properties, Parkway Crossing, and Ray Lofti and remand the cause for further proceedings.