**Opinion issued August 18, 2016**



**In The**

# Court of Appeals

**For The**

# First District of Texas

————————————

**NO. 01-15-01106-CV**

————————————

**CATHERINE JOHNSON, INDIVIDUALLY AND AS
PERSONAL REPRESENTATIVE AND HEIR OF
THE ESTATE OF FREDDIE MAE JOHNSON, Appellant
V.**

**PHCC-WESTWOOD REHABILITATION AND HEALTH
CARE CENTER, LLC D/B/A WESTWOOD
REHABILITATION AND
HEALTH CARE CENTER AND VIREN SHAH, M.D., Appellees**

---

**On Appeal from the 333rd District Court
Harris County, Texas
Trial Court Case No. 2014-00261**

---

## O P I N I O N

In this health care liability suit, the trial court granted a final summary

judgment based on the statute of limitations, impliedly holding that the

authorizations for medical records accompanying Catherine's notice of a health care claim were deficient and thus ineffective to toll limitations. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.051(a), (c) (West 2015) (providing for 75-day tolling period if plaintiff sends compliant notice and medical records authorization to health care provider).

Catherine Johnson, individually and as the personal representative and heir of the estate of Freddie Mae Johnson, sued PHCC–Westwood Rehabilitation & Health Care Center and Viren Shah, M.D. for medical negligence. On appeal, Catherine contends that she complied with the authorization and notice required for health care liability claims, and thus, the trial court erred in granting summary judgment. Because the medical authorizations that Catherine provided do not comply with the statutory requirements for medical authorizations, the trial court properly granted summary judgment. We therefore affirm.

## BACKGROUND

Catherine's mother, Freddie Mae Johnson, was admitted to Westwood in 2008 after she suffered a stroke that left her unable to speak. She was in her mid-eighties and had other serious chronic illnesses, including dementia, a seizure disorder, hypertension, diabetes, and multiple pressure sores. Dr. Shah was Freddie Mae's attending physician. Freddie Mae developed a large

2

decubitus ulcer during her stay at Westwood. Medical records from Westwood reflect that on December 7, 2011, Freddie Mae's care was transferred to another physician, Dr. Nguyen, and Dr. Shah was discharged from her care.[1] The next day, December 8, Freddie Mae was discharged from Westwood and transferred to Texas Specialty Hospital.

On January 25, 2012, Freddie Mae was admitted to Briarwood Nursing and Rehabilitation. In addition to the treatment at Briarwood, Freddie Mae also received treatment for the decubitus ulcer from Vohra Wound Physicians. Freddie Mae died on November 2, 2012.

Before Freddie Mae's death, Catherine sent written notices of health care liability claims to Westwood and Dr. Shah, on February 24, 2012 and March 21, 2012, respectively. The medical records authorization accompanying the notices was signed by Freddie Mae's other daughter, Alice Sims, as the grantee of a general power of attorney for Freddie Mae. The general power of attorney, which Freddie Mae executed on July 10, 2000, conferred to Sims the power "including but not limited" to:

---

[1] Dr. Shah's billing records initially showed that Freddie Mae saw him for an outpatient visit at his office on January 9, 2012, but Dr. Shah later provided a corrected billing record showing a reversal of charge for that visit. No medical records show that Dr. Shah provided Freddie Mae with care on that date. The record shows that Freddie Mae received care for the decubitus ulcer from Dr. Shah until December 7, 2011.

the right to sell, deed, buy, lease, mortgage, assign, rent or dispose of any present or future real or personal property; the right to execute, accept, undertake and perform any [and] all contracts in my name; the right to deposit, endorse, or withdraw funds to or from any of my bank accounts, depositories or safe deposit box; the right to borrow, lend, invest or reinvest funds on any terms; the right to initiate, defend, commence or settle legal actions on my behalf; the right to vote (in person or by proxy) any shares or beneficial interest in any entity, and the right to retain any accountant, attorney, or other advisor deemed necessary to protect my interest generally or relative to any foregoing unlimited power.

The medical records authorization sent to Westwood and Dr. Shah identified health care providers who examined, evaluated, or treated Freddie Mae in connection with the decubitus ulcer, including the following entity and individuals:

Westwood Rehabilitation and Health Care Center
8702 South Coarse Drive
Houston, Texas 77099

Viren Shah, M.D.
1522 Southwest Freeway, Suite 265
Sugar Land, Texas 77478

Deborah _____, R.N.
[Westwood]

Patricia _____, R.N.
[Westwood]

The authorization did not identify any of the health care providers who treated Freddie Mae for the decubitus ulcer during the period between December 8,

2011 and February 24, 2012—after Freddie Mae was discharged from Westwood but before Johnson sent the notice of claim. These providers were:

- Dr. Cao (12/13/11);
- Briarwood Nursing and Rehabilitation (1/25/12);
- Dr. Nguyen (1/25/12);
- Dr. Yevich (2/2/12);
- Dr. Narang and Vohra Wound Physicians (12/13/11 to 1/20/12); and
- Dr. Pham (2/3/12, 2/17/12).

Johnson first identified the omitted providers in response to defendants' interrogatories.

The authorization identified as health care providers as those who examined, evaluated, or treated Freddie Mae for the period beginning five years before the incident made the basis of the claim the following entities and individuals:

Westwood Rehabilitation and Health Care Center
8702 South Coarse Drive
Houston, Texas 77099

Viren Shah, M.D.
15200 Southwest Freeway, Suite 265
Sugar Land, Texas 77478

Texas Specialty Hospital
Case Manager Regina Johnson
6160 South Loop East
Houston, Texas 77087

Advance Diagnostics
8307 Knight Road
Houston, Texas 77054

University General Hospital
7501 Fannin Street
Houston, Texas 77054

Park Plaza Hospital
1313 Hermann Drive
Houston, Texas 77004

The authorization did not identify the entities and individuals who examined, evaluated or treated Freddie Mae in that five-year period, namely:

- The facility or facilities where Freddie Mae resided before her admission to Westwood;
- Dr. Thakkar; and
- Triumph Wound Care.

Johnson filed suit on January 3, 2014, 26 days after the two-year statute of limitations based on the date of Freddie Mae's discharge from Westwood and 27 days after the last date that Freddie Mae was under Dr. Shah's care. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.251(a).

## DISCUSSION

### I. Standard of Review

We review de novo the trial court's ruling on a motion for summary judgment. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). In a traditional motion for summary judgment, the movant must establish that no genuine issue of material fact exists and the movant is thus entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). When reviewing a summary judgment, we take as true all evidence favorable

to the non-movant and resolve any doubts in the non-movant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accid. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).

Traditional summary judgment is proper only if the movant establishes that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). The motion must state the specific grounds relied upon for summary judgment. *Id.* A genuine issue of material fact exists if the non-movant produces more than a scintilla of probative evidence regarding the challenged element. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *see also Forbes Inc. v. Granada Bioscis., Inc.*, 124 S.W.3d 167, 172 (Tex. 2003) ("More than a scintilla of evidence exists if it would allow reasonable and fair-minded people to differ in their conclusions."). A defendant moving for traditional summary judgment must either (1) disprove at least one element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of an affirmative defense to rebut the plaintiff's cause. *Khan v. GBAK Props., Inc.*, 371 S.W.3d 347, 352 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (citing *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997)).

It is an affirmative defense to assert that a claim is barred by the statute of limitations. TEX. R. CIV. P. 94. Accordingly, the party moving for summary

7

judgment based on the statute of limitations carries the burden of establishing as a matter of law that the limitations period had expired on the relevant claims. *Id.* (citing *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex.1990). This includes establishing when the causes of action accrued. *Id.*

## II. Proper Notice and Limitations for Health Care Liability Claims

A health care-liability claim has a two-year limitations period. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.251(a). Plaintiffs asserting health care liability claims must provide at least 60 days' notice to each physician or health care provider against whom a claim is made before filing suit. *Id.* § 74.051(a). Notice provided under section 74.251(a) tolls the limitations period for 75 days. *See id.*; *Rowntree v. Hunsucker*, 833 S.W.2d 103, 104 n.2 (Tex. 1992); *Rubalcaba v. Kaestner*, 981 S.W.2d 369, 373 (Tex. App.— Houston [1st Dist.] 1998, pet. denied). A medical-records release form that complies with section 74.052 must accompany the notice. TEX. CIV. PRAC. & REM. CODE ANN. § 74.051(e); *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 189 (Tex. 2012).

## III. Compliance with Section 74.052

Section 74.052 provides that "[t]he medical authorization required by this section shall be in the following form," and it proceeds to give the text of the form, with blanks to be filled in with information specific to the plaintiff's

claim.  TEX. CIV. PRAC. & REM. CODE ANN. § 74.052(c) (West 2011).  Tolling occurs only when the plaintiff provides notice and the executed medical-records release authorization form.  *See Tex. W. Oaks Hosp.*, 371 S.W.3d at 189; *Jose Carreras, M.D., P.A. v Marroquin*, 339 S.W.3d 68, 73 (Tex. 2011).

The medical authorization form must identify the patient's treating physicians for the past five years.  TEX. CIV. PRAC. & REM. CODE ANN. § 74.052(c).  The form also must identify the plaintiff's treating physicians for the five years before "the incident made the basis of the accompanying notice of health care claim."  *Id.* § 74.052(c).  The authorization form must grant the defendant physician or health care provider authorization to receive the plaintiff's medical records from all of those physicians.  *Id.* § 74.052; *Mitchell v. Methodist Hosp.*, 376 S.W.3d 833, 836 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).  The notice and authorization form encourage pre-suit investigation, negotiation, and settlement of health care liability claims.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.052; *Mitchell*, 376 S.W.3d at 836 (citing *Carreras*, 339 S.W.3d at 73).  The medical authorization form is designed to allow the health care provider to both disclose and obtain information.  *Mitchell*, 376 S.W.3d at 838 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 74.052(c)).

**A.    A general power of attorney is not a medical power of attorney.**

Johnson first contends that she substantially complied with the statutory medical records authorization form by using the form with Sims's signature under her general power of attorney.  Johnson argues that Sims's signature is effective because Freddie Mae's medical records demonstrate that she meets the statutory definition of "incapacitated person" under the Estates Code.  *See* TEX. EST. CODE ANN. § 22.016(2) (West 2014) (defining "incapacitated person" as "an adult who, because of a physical or mental condition, is substantially unable to provide food, clothing, or shelter for himself or herself; care for the person's own physical health; [or] manage the person's own financial affairs . . .").

Our inquiry into whether the medical records authorization sent to Westwood and Dr. Shah provides a valid basis for disclosure begins with federal law, which makes it a crime for a person to disclose, without authorization, the individually identifiable health information of another person.  *See* 42 U.S.C. § 1320d–6(a)(3) (2010) (Health Insurance Portability and Accountability Act of 1996, as amended).  HIPAA regulations provide that a person qualifies as a personal representative for purposes of obtaining disclosure of protected health information "[i]f under applicable law a person

has authority to act on behalf of an individual who is an adult . . . in making decisions related to health care." 45 C.F.R. § 164.502(g)(2) (2013).

The Texas Health and Safety Code provides the applicable law that HIPAA references. A person may obtain the authority to act as an "agent" on behalf of another adult in making health care-related decisions solely by executing a medical power of attorney.[2]  *See* TEX. HEALTH & SAFETY CODE ANN. §§ 166.152, 166.162–.164 (West 2015). Pertinent to this case, the statute further explains that "[a]n agent may exercise authority only if the principal's attending physician certifies in writing and files the certification in the principal's medical record that, based on the attending physician's reasonable medical judgment, the principal is incompetent." *Id.* § 166.152(b).

The authorization that Johnson provided does not comply with these requirements. Neither the general power of attorney nor the authorization form identifies Sims as having power to sign on behalf of Freddie Mae with respect to obtaining disclosure of her medical records or as her agent for making health-care related decisions. The power of attorney, which was executed nearly 12 years before the medical records release authorization,

---

[2]  Texas statute does not refer to a "general power of attorney" like the one Johnson provided, but under current law, a statutory durable power of attorney form expressly states that it "does not authorize anyone to make medical and other health care related decisions for you." TEX. EST. CODE ANN. 752.051 (West 2015).

11

does not identify Freddie Mae as an incapacitated person for purposes of making her medical decisions. These omissions make the form of questionable validity for a health care provider to use as basis for disclosing medical records.

### B. The list of health care providers is materially incomplete.

The authorization also deviates from section 74.052's requirements that Johnson (1) identify and authorize disclosure of records from the other health care providers who treated Freddie Mae for the decubitus ulcer, and (2) identify all of her health care providers for the five years before the incident giving rise to the claim. With regard to treatment of her decubitus ulcer, the authorization form identifies only Westwood and Shah, but none of Freddie Mae's other providers since December 2011—which, for investigative purposes, made it equivalent to no disclosure. The authorization also fails to identify past providers who treated Freddie Mae in the past for decubitus ulcers, a significant omission.

Johnson contends that the medical authorization that she provided to Westwood and Shah substantially complied with the notice requirement by providing the form of medical authorization with the information she had available at the time. This contention ignores that she—and not the defendants—could obtain that information, as demonstrated by her discovery

12

responses. The trial court reasonably could have concluded that Johnson's failure to timely identify these providers to Westwood and Shah thwarted their ability to retrieve a material number of Freddie Mae's relevant medical provider's records, and thus interfered with the pre-suit evaluation encouraged by the statute. *See Mitchell*, 376 S.W.3d at 838 (quoting *MacFarlane v. Burke*, No. 01–10–00409–CV, 2011 WL 2503937, at *3 (Tex. App.—Houston [1st Dist.] June 23, 2011, no pet.) (mem. op.).

*Rabatin v. Kidd*, 281 S.W.3d 558 (Tex. App.—El Paso 2008, no pet.), which Johnson relies on to support her contention that the omissions did not render her authorization ineffective, is unavailing. *See id.* at 562. Since the El Paso court decided that case, the Texas Supreme Court has made clear that the plaintiff must provide both the statutory notice of claim and medical authorization to toll the statute of limitations in a health care liability claim. *See Carreras*, 339 S.W.3d at 74; *see also Nicholson v. Shinn*, No. 01-07-00973-CV, 2009 WL 3152111, at *5–6 (Tex. App.—Houston [1st Dist.] Oct. 1, 2009, no pet.) (mem. op.) (holding that notice and authorization were ineffective to toll statute because release failed to include information on plaintiff's physicians for previous five years and portion requiring her to identify her treating physicians was also incomplete).

**CONCLUSION**

We hold that the authorization form that Johnson provided did not toll the statute of limitations under section 74.051. *See Carreras*, 339 S.W.3d at 74. Because Johnson failed to give proper notice pursuant to Civil Practice and Remedies Code sections 74.051 and 74.052 before the statute of limitations expired and filed suit after the limitations period, the trial court correctly held that her suit is time-barred. We therefore affirm the judgment of the trial court.

                         Jane Bland
                         Justice

Panel consists of Justices Higley, Bland, and Massengale.