# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

—————

No. 17-50909
Summary Calendar

—————

United States Court of Appeals
Fifth Circuit

**FILED**
July 2, 2018

Lyle W. Cayce
Clerk

JENNIFER JORRIE,

      Plaintiff–Appellant,

v.

THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., as successor-in-interest to all permitted successors and assigns of JP Morgan Chase Bank, National Association, as Trustee for Specialty Underwriting and Residential Finance Trust Mortgage Loan Asset-Backed Certificates Series 2005-BC2,

      Defendant–Appellee.

—————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:16-CV-490

—————————————

Before JOLLY, OWEN, and HAYNES, Circuit Judges.

PER CURIAM:*

     Jennifer Jorrie bought a home in 2005 after executing a promissory note and deed of trust (collectively, the Note). Four years later, she stopped making payments on the Note. The Note was accelerated in 2009, and the Bank of New York Mellon Trust Company (the Bank) made its first of many attempts

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-50909

to sell the home at a foreclosure sale.  Jorrie prevented these attempts by filing numerous lawsuits, obtaining numerous temporary restraining orders (TROs) against the Bank, and petitioning for bankruptcy several times.  The Bank rescinded its first acceleration in March 2014, but accelerated the Note again in November 2015 as Jorrie continued to default.  Jorrie then brought this action and obtained another TRO in December 2015.  Relevant to this appeal, Jorrie's lawsuit included a quiet title claim premised on the argument that Texas's four-year statute of limitations had rendered the Bank's lien unenforceable.  In a summary judgment ruling, the district court rejected Jorrie's argument that her pendent bankruptcy petition automatically stayed district court proceedings and ruled for the Bank on the quiet title claim, concluding that the limitations period had not expired.  Jorrie appealed.  We affirm.

## I

Jennifer Jorrie and her husband James Jorrie bought a home in San Antonio, Texas.  Jorrie executed a promissory note and deed of trust on January 7, 2005 for $193,100.  Through a series of assignments, the Note was ultimately assigned to the Bank on June 17, 2009.

Jorrie stopped making payments on the Note in 2009.  The Note was accelerated on June 8, 2009, and the Bank soon made its first of several attempts to sell the home in a foreclosure sale.  Jorrie stymied the Bank's first three attempts by filing lawsuits the day before each of the scheduled foreclosures and obtaining *ex parte* TROs that enjoined the planned foreclosure sales.  She dismissed those lawsuits with prejudice the day before each temporary injunction hearing.

A fourth foreclosure was halted when Jorrie filed a bankruptcy petition on August 3, 2010 (the 2010 Bankruptcy).  An automatic stay issued that prevented the Bank from foreclosing on Jorrie's home for the duration of the

2

2010 Bankruptcy. The bankruptcy court dismissed the petition 85 days later, on October 27, 2010.

The Bank's fifth foreclosure resulted in Jorrie's filing a fourth lawsuit and obtaining a fourth *ex parte* TRO. At the temporary injunction hearing on July 19, 2011, the district court entered an "Agreed Order" instead of granting a temporary injunction. The Agreed Order provided that (1) Jorrie would pay the Bank $10,000 within ten days; (2) she would reinstate or pay off the Note before a September 2011 foreclosure sale; (3) the Bank would be free to conduct a foreclosure sale in September 2011 or later; and (4) if Jorrie failed to make the $10,000 payment on time or reinstate or pay off the Note, the case would be dismissed.

Though Jorrie did not reinstate or pay off the Note by the end of September 2011, the lawsuit was not dismissed. Jorrie instead applied for a temporary injunction to prevent the Bank from foreclosing on her home while she pursued her lawsuit. The state court issued an injunction (the 2011 Temporary Injunction) on October 4, 2011, ordering that the Bank be "prevent[ed] . . . from foreclosing on" Jorrie's home. The court also ordered that Jorrie deposit $44,400 into the court registry and make a monthly payment of $1,700 to the court registry during the pendency of her lawsuit. Jorrie failed to make these payments. The state court dismissed her lawsuit on April 30, 2012, thereby lifting the 2011 Temporary Injunction 208 days after its entry.

The Bank attempted foreclosure a sixth time. On the day of the foreclosure sale, August, 7, 2012, Jorrie filed a fifth lawsuit and obtained her fifth *ex parte* TRO. The state court later dismissed this lawsuit for want of prosecution.

Despite Jorrie's continued nonpayment, the Bank mailed to Jorrie a Notice of Rescission of Loan Maturity (the Rescission Notice) on March 27,

No. 17-50909

2014. The Rescission Notice purported to "rescind[] the [a]cceleration of the debt and maturity of the Note" and to place the Note "in accordance with [its] original terms and conditions, as though no acceleration took place."

Jorrie filed a second bankruptcy petition on April 1, 2014. This petition was dismissed on August 29, 2014.

Meanwhile, Jorrie remained in default. The Bank sent Jorrie a notice of default on November 17, 2014 and explained that it would accelerate the Note again if Jorrie did not cure the default. When she did not cure the default, the Bank sent a notice of acceleration on November 19, 2015. This notice explained that the Bank had accelerated the Note and would sell the home at a foreclosure sale on January 5, 2016.

Once more, Jorrie delayed foreclosure by filing the present lawsuit on December 30, 2015, and obtaining another *ex parte* TRO the next day. Of her several claims, only the quiet title claim is relevant to this appeal. She contended that the Bank's lien on her property is unenforceable under Texas's four-year limitations period for enforcing real property liens. The Bank removed the case to federal court and the parties filed cross-motions for summary judgment.

While those motions were pending, Jorrie filed a third bankruptcy petition in April 2017. The bankruptcy court quickly dismissed this petition after Jorrie missed filing requirements. Jorrie then filed a fourth bankruptcy petition in July 2017 and filed a suggestion of bankruptcy in this case. She argued to the district court that the Bankruptcy Code's automatic stay under 11 U.S.C. § 362(a) prevented her lawsuit against the Bank from proceeding in district court.

The district court resolved the bankruptcy issue and the summary judgment motions in the Bank's favor on September 11, 2017. It first ruled that the bankruptcy had no effect on Jorrie's lawsuit because the automatic

4

No. 17-50909

stay does not apply to proceedings against a non-debtor.  It then held that the limitations period had not expired on the Bank's lien and that the Bank was thus entitled to judgment as a matter of law on Jorrie's quiet title claim.  Jorrie timely appealed.

## II

This appeal involves no factual disputes.  It presents two purely legal questions, which we review de novo.[1]  The first question is whether Jorrie's July 2017 bankruptcy filing deprived the district court of the power to rule on the pending summary judgment motions.  It did not.

Jorrie's July 2017 bankruptcy filing did not trigger an automatic stay of the present litigation.  That is because Jorrie is the plaintiff in this case, and 11 U.S.C. § 362(a)'s automatic stay applies only to judicial proceedings that are "*against* the debtor."[2]

Jorrie's alternative argument, that the district court improperly withdrew the case from the bankruptcy court, is also unavailing.  Jorrie did not make this argument to the district court.  She thus forfeited it for purposes of this appeal.[3]

Moreover, even if properly preserved, this argument would still fail because the lawsuit was never transferred to the bankruptcy court.  The Western District of Texas's standing Order of Reference of Bankruptcy Cases

---

[1] FED. R. CIV. P. 56(a) (providing that summary judgment for the movant is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

[2] 11 U.S.C. § 362(a) (emphasis added); *see GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985) (explaining the "limited scope of the automatic stay in bankruptcy proceedings," which "acts to stay any judicial proceeding against the debtor" (internal quotations omitted)); *see also In re Versoy*, 306 F. App'x 65, 68-69 (5th Cir. 2009) (explaining that "if the debtor brings the initial claim, [11 U.S.C.] § 362 has no effect").

[3] *See, e.g.*, *Stewart Glass & Mirror, Inc. v. U.S. Auto Glass Disc. Ctrs., Inc.*, 200 F.3d 307, 316-17 (5th Cir. 2000) ("It is a bedrock principle of appellate review that claims raised for the first time on appeal will not be considered.").

No. 17-50909

and Proceedings provides that civil actions filed *before* a related bankruptcy petition are *not* automatically referred to bankruptcy court.[4]  A district judge may refer such cases to the bankruptcy court, but Jorrie never made that request to the district court.[5]  Since the case was never transferred to bankruptcy court, the district court could not have withdrawn it, let alone have done so contrary to 28 U.S.C. § 157(d).  The district court correctly concluded that the July 2017 bankruptcy petition did not affect this litigation.

### III

The second legal question is whether the district court erred in granting summary judgment to the Bank on Jorrie's quiet title claim.  The parties dispute only one element of that claim: whether the Bank's lien, though facially valid, is invalid or unenforceable.  Jorrie sought to establish this element by showing that Texas's four-year limitations period for enforcing the lien had expired when she brought her quiet title action.  The district court rejected this argument on summary judgment, concluding that the limitations period had not run when Jorrie filed her claim and that she thus could not prevail in her quiet title claim.

In Texas, a secured lender has four years to foreclose real property from the day the lender's foreclosure cause of action accrues.[6]  For accelerated notes like the one here, an action accrues "when the holder actually exercises its option to accelerate" the note.[7]  Once four years have expired, the lender's lien is typically unenforceable.[8]

---

[4] Western District of Texas Order 13-01, Order of Reference of Bankruptcy Cases and Proceedings (Oct. 4, 2013), http://www.txwb.uscourts.gov/sites/txwbcoop/files/Order%20of%20Reference%20BK%20Cases.pdf.

[5] *Id.*

[6] TEX. CIV. PRAC. & REM. CODE § 16.035(a).

[7] *See Boren v. U.S. Nat'l Bank Ass'n*, 807 F.3d 99, 104 (5th Cir. 2015) (quoting *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001)).

[8] TEX. CIV. PRAC. & REM. CODE § 16.035(d).

No. 17-50909

Two doctrines can alter this calculation, however. First, the equitable tolling doctrine pauses the limitations clock when "a [party] is prevented from exercising [its] legal remedy by the pendency of legal proceedings . . . ."[9] This time will "not be counted against [that party] in determining whether limitations have barred [its] right" to legal remedy.[10]

Second, if foreclosure was triggered by accelerating a lien (as it was here), acceleration can be abandoned. Abandonment resets the statute of limitations clock by "restoring the contract to its original condition" and "restoring the note's original maturity date."[11] There are several ways to abandon acceleration. The parties can abandon acceleration "by agreement or other [joint] action."[12] The lender can abandon acceleration if it "continues to accept payments without exacting any remedies available to it upon declared maturity" (*i.e.* upon acceleration).[13] Or, as relevant here, the lender "may unilaterally abandon acceleration" "by sending notice to the borrower that the lender is no longer seeking to collect the full balance of the loan and will permit the borrower to cure its default by providing sufficient payment to bring the note current under its original terms."[14]

These doctrines, applied to the undisputed timeline, show that the limitations period had not expired when Jorrie filed her quiet title claim. The Bank's cause of action accrued on June 8, 2009, when the Bank first accelerated the Note. Absent equitable tolling, the limitations period would

---

[9] *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 157 (Tex. 1991) (quoting *Walker v. Hanes*, 570 S.W.2d 534, 540 (Tex. Civ. App.—Corpus Christi 1978, writ ref'd n.r.e)).

[10] *Id.* (quoting *Walker*, 570 S.W.2d at 540).

[11] *Boren*, 807 F.3d at 104 (quoting *Khan v. GBAK Props.*, 371 S.W.3d 347, 353 (Tex. App.—Houston [1st Dist.] 2012, no pet.)).

[12] *Id.* (quoting *Kahn*, 371 S.W.3d at 353).

[13] *Id.* (quoting *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001)).

[14] *Id.* at 105.

7

have expired by June 8, 2013. But when legal proceedings twice prevented the Bank from exercising its right to foreclose, equitable tolling paused the limitations clock. The first pause happened during the 2010 Bankruptcy, when the automatic stay kept the Bank from foreclosing for 85 days. The second pause occurred during the 2011 Temporary Injunction, which enjoined the Bank from foreclosing for 208 days.

The limitations period was thus equitably tolled for a combined 293 days—85 days from the 2010 Bankruptcy plus 208 days from the 2011 Temporary Injunction. This means that the Bank's lien would have expired four years and 293 days from June 8, 2009—or March 28, 2014. The Bank successfully abandoned its acceleration on March 27, 2014, when it notified Jorrie that the Note's full balance was no longer due and that she could cure the default by resuming her original loan payments. By abandoning acceleration before the limitations period expired, the Bank stopped the limitations clock from running.

The Bank accelerated the Note again on November 19, 2015. This acceleration caused a four-year limitations period to run anew. But Jorrie filed her quiet title claim just a few months later, on December 30, 2015. So this new limitations period had not yet expired when Jorrie filed her claim.

Jorrie challenges just one aspect of the foregoing calculation. She argues that the limitations period should not have been tolled during the 87 days that the district court's Agreed Order prevented the Bank from foreclosing and that the district court erred by not subtracting those 87 days from the 208-day period associated with the 2011 Temporary Injunction.

This argument has no merit for several reasons, one of which is that the Agreed Order and the 2011 Temporary Injunction covered different time periods. The Agreed Order prevented foreclosure from July 5, 2011 to September 30, 2011. The 2011 Temporary Injunction prevented foreclosure

from October 4, 2011 to April 30, 2012.  The 208-day period that the district court used to calculate the equitable tolling period did not include the 87 days during which the Agreed Order was in effect.

The district court properly applied the doctrines of equitable tolling and abandonment and correctly concluded that the limitations period had not expired when Jorrie filed her quiet title claim.

*       *       *

For these reasons, we AFFIRM the judgment of the district court.