

IN THE
TENTH COURT OF APPEALS

No. 10-15-00239-CV

ADAM M. BOROWSKI, M.D., BRIAN D. BULL, M.D.,
AND HILLCREST FAMILY HEALTH CENTER,

                                                                Appellants

 v.

KAREN AYERS, INDIVIDUALLY AND AS
REPRESENTATIVE OF THE ESTATE OF
DARYL LYNN AYERS, DECEASED, AND ETHAN AYERS,

                                                                Appellees

From the 414th District Court
McLennan County, Texas
Trial Court No. 2012-3325-5

## OPINION

On September 4, 2012, Appellees Karen Ayers, individually and as representative

of the estate of Daryl Lynn Ayers, deceased, and Ethan Ayers filed a health care liability

suit against Appellants Adam M. Borowski, M.D., Brian Bull, M.D., Hillcrest Family

Health Center, and several other defendants. The Ayerses allege that Daryl died because

Dr. Borowski, Dr. Bull, and other defendants failed to recognize and treat an aortic

dissection between July 24 and July 26, 2010. The Ayerses assert that Hillcrest is vicariously liable for Dr. Bull's alleged negligence.

Dr. Borowski filed a traditional motion for summary judgment, contending that the Ayerses' claims are barred by the statute of limitations. To support the motion, Dr. Borowski included as summary-judgment evidence his own affidavit and the affidavit of Nathan Forrest, D.O., one of the other defendants at the time.[1] Dr. Forrest stated in his affidavit that shortly after June 7, 2012, he received a letter entitled "Notice of Claim," advising that a health care liability claim may be asserted for negligence in the medical care provided to Daryl Ayers on or about July 24, 2010. The Notice of Claim letter, a copy of which was attached to Dr. Forrest's affidavit, was also addressed to Dr. Bull, Providence Health Center c/o its registered agent Mr. Kent Keahey, and Dennis M. Plante, M.D. Dr. Forrest also stated in his affidavit that a document entitled "Authorization Form for Release of Protected Health Information" accompanied the Notice of Claim letter. The authorization form, a copy of which was also attached to Dr. Forrest's affidavit, stated in relevant part:

> B.     The health information to be obtained, used, or disclosed extends to and includes the verbal as well as the written and is specifically described as follows:
>
> . . . .
>
> 2.     The health information in the custody of the following

---

[1] The trial court subsequently signed an order granting the Ayerses' notice of nonsuit without prejudice of claims against Dr. Forrest.

physicians or health care providers who have examined, evaluated, or treated DARYL LYNN AYERS during a period commencing five years prior to the incident made the basis of the accompanying Notice of Health Care Claim.

> ALL HEATH [*sic*] CARE PROVIDERS PROVIDING CARE/TREATMENT TO DARYL LYNN AYERS.

Dr. Borowski stated in his affidavit that he did not receive a Notice of Claim letter from the Ayerses or their attorney before suit was filed.

Based on this summary-judgment evidence, Dr. Borowski made the following argument: Because the authorization form did not list the name or current address of any physicians or health care providers who had treated Daryl during the five years before the alleged incident, it was "essentially rendered meaningless" and failed to comply with the requirements of section 74.052.[2] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.052 (West Supp. 2016). Because the authorization form failed to comply with section 74.052, the Ayerses did not provide the proper statutory pre-suit notice to any of the defendants as required by section 74.051. *See id.* § 74.051 (West 2011). The Ayerses were therefore not entitled to the seventy-five-day tolling benefit of pre-suit notice, and the Ayerses' claims, which were not filed until after the two-year limitations period had expired, are thus barred by the statute of limitations. *See id.* § 74.251(a) (West 2011).

Dr. Bull and Hillcrest subsequently filed a traditional motion for summary

---

[2] All references in this opinion to statutory chapters, sections, and subsections are references to chapters, sections, and subsections in the Texas Civil Practice and Remedies Code, unless otherwise indicated.

judgment, asserting substantially the same argument. To support their motion, Dr. Bull and Hillcrest included as summary-judgment evidence the Ayerses' original and first amended petitions and Dr. Bull's own affidavit. Dr. Bull stated in his affidavit that, after June 7, 2012, he received from the Ayerses' counsel the "Notice of Claim" letter and "Authorization Form for Release of Protected Health Information," copies of which were attached to his affidavit. Dr. Bull also stated that these were the first and only documents purporting to be a Notice of Claim involving his care of Daryl that he received from the Ayerses' counsel or any other attorney.

The trial court generally denied Appellants' motions for summary judgment. Dr. Borowski filed a motion to amend the order denying summary judgment and for interlocutory appeal. The trial court signed an amended order, again denying Appellants' motions for summary judgment but permitting an appeal from the interlocutory order. We initially granted Appellants' joint petition for permission to appeal the amended order but then dismissed the appeal for want of jurisdiction. *Borowski v. Ayers*, 432 S.W.3d 344, 346, 348 (Tex. App.—Waco 2013, no pet.). We concluded that the trial court did not substantively rule on the controlling legal issue presented in the appeal and that the interlocutory order did not therefore involve a controlling question of law, a requirement of subsection 51.014(d) for the trial court to permit an appeal from an order that is not otherwise appealable. *Id.* at 347; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(d) (West Supp. 2016).

Dr. Borowski then filed in the trial court a motion for rehearing of his motion for summary judgment and, in the alternative, motion to clarify the summary judgment order. The trial court subsequently signed a second amended order again denying Appellants' motions for summary judgment but specifying that the trial court's "sole basis" for its denial of the motions for summary judgment was:

4. Plaintiffs' "Authorization Form for Release of Protected Health Information" meets the legal requirements of Section 74.052 of the *Texas Civil Practice & Remedies Code* for the sole reason that: Plaintiffs' Authorization tracked the statutory text of the statute, which, when coupled with their inclusion of the statement in Section B(2) of the Authorization form, "ALL HEALTH CARE PROVIDERS PROVIDING CARE/TREATMENT TO DARYL LYNN AYERS," constituted substantial compliance with Section 74.05(c) [*sic*] of the *Texas Civil Practice & Remedies Code*. Utilization of that Authorization, combined with Plaintiffs' compliance with the legal requirement of Sections 74.051 and 74.052 of the *Texas Civil Practice & Remedies Code* to provide a notice of health care claim, utilizing the above described Authorization form, at least 60 days before the filing of Plaintiffs' lawsuit, therefore constituted substantial compliance with the notice requirements of the statute.

5. Because Plaintiffs substantially complied with the requirements to provide statutory notice of claim, as set forth in Section 74.051(a) of the *Texas Civil Practice & Remedies Code*, the applicable statute of limitations in Section 74.251(a) of the *Texas Civil Practice & Remedies Code* was tolled by operation of Section 74.051(c) of the *Texas Civil Practice & Remedies Code*, such that Plaintiffs timely filed their lawsuit on September 4, 2012.

The trial court also again permitted an appeal from the interlocutory order.

We granted Appellants' petitions for permission to appeal this second amended

order denying their motions for summary judgment. In their sole issue,[3] Appellants contend that the Ayerses are not entitled to the benefit of subsection 74.051(c)'s tolling provision because a medical authorization like the one provided by the Ayerses, which generally tracks the statutory text of subsection 74.052(c) but fails to list the name and current address of any health care provider who examined, evaluated, or treated the patient during the five years before the incident that is the basis of the notice of health care claim, does not comply or substantially comply with subsection 74.052(c)'s requirements.

We review *de novo* a trial court's grant or denial of a traditional motion for summary judgment. *See Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 n.7 (Tex. 2005). In reviewing a traditional summary judgment, we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). The movant carries the burden of establishing that no material fact issue exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). The nonmovant has no burden to respond to a summary-judgment motion unless the movant conclusively establishes its

---

[3] Dr. Borowski filed an appellant's brief, and Dr. Bull and Hillcrest filed a separate joint appellants' brief, but Dr. Borowski's sole issue in his brief and Dr. Bull's and Hillcrest's sole issue in their brief are essentially the same. In fact, Appellants together filed one reply brief to the Ayerses' appellees' brief. Therefore, we will address Dr. Borowski's sole issue and Dr. Bull's and Hillcrest's sole issue together as one issue.

cause of action or defense. *M.D. Anderson Hosp. & Tumor Inst.*, 28 S.W.3d at 23. Once the movant produces sufficient evidence conclusively establishing its right to summary judgment, the burden shifts to the nonmovant to present evidence sufficient to raise a fact issue. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). In reviewing a traditional summary judgment, we must consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the motion. *See Goodyear Tire & Rubber Co.*, 236 S.W.3d at 756.

A health care liability claim has a two-year limitations period. TEX. CIV. PRAC. & REM. CODE ANN. § 74.251(a).[4] A claimant, however, can obtain a seventy-five-day tolling period by complying with certain notice requirements. *Id.* § 74.051(c).[5] There is no dispute that the Ayerses filed suit more than two years after their cause of action accrued but that their suit was timely filed if they were entitled to the seventy-five-day tolling period. The issue then is whether the Ayerses were entitled to the tolling period.

---

[4] Section 74.251(a) states in relevant part:

> Notwithstanding any other law and subject to Subsection (b), no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed.

*Id.*

[5] Section 74.051(c) states: "Notice given as provided in this chapter shall toll the applicable statute of limitations to and including a period of 75 days following the giving of the notice, and this tolling shall apply to all parties and potential parties." *Id.*

Subsection 74.051(c) states that the two-year limitations period is tolled for seventy-five days when notice is "given as provided" in chapter 74. *Id.* Subsection 74.051(a) provides the following requirements for giving notice:

> Any person or his authorized agent asserting a health care liability claim shall give written notice of such claim by certified mail, return receipt requested, to each physician or health care provider against whom such claim is being made at least 60 days before the filing of a suit in any court of this state based upon a health care liability claim. The notice must be accompanied by the authorization form for release of protected health information as required under Section 74.052.

*Id.* § 74.051(a). A plaintiff must therefore provide both the statutorily required notice of health care liability claim *and* the statutorily required authorization form for notice to be "given as provided" by chapter 74 and for the statute of limitations to thus be tolled. *Carreras v. Marroquin*, 339 S.W.3d 68, 74 (Tex. 2011).

Section 74.052 provides the requirements for the authorization form. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.052. Section 74.052 states in relevant part:

> (a) Notice of a health care claim under Section 74.051 must be accompanied by a medical authorization in the form specified by this section. Failure to provide this authorization along with the notice of health care claim shall abate all further proceedings against the physician or health care provider receiving the notice until 60 days following receipt by the physician or health care provider of the required authorization.
>
> . . . .
>
> (c) The medical authorization required by this section shall be in the following form . . . .

**AUTHORIZATION FORM FOR RELEASE OF PROTECTED HEALTH INFORMATION**

. . . .

> B.  The health information to be obtained, used, or disclosed extends to and includes the verbal as well as the written and is specifically described as follows:

> . . . .

> 2.  The health information in the custody of the following physicians or health care providers who have examined, evaluated, or treated _____ (patient) during a period commencing five years prior to the incident made the basis of the accompanying Notice of Health Care Claim.  (Here list the name and current address of such physicians or health care providers, if applicable.)

*Id.* § 74.052(a), (c).

"When construing a statute, we begin with its language."  *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006).  "Our primary objective is to determine the Legislature's intent."  *Id.*  When possible, we discern the legislative intent from the plain meaning of the words chosen.  *Id.*  "If the statute is clear and unambiguous, we must apply its words according to their common meaning without resort to rules of construction or extrinsic aids."  *Id.*  We may also determine legislative intent by considering the objective of the law, the law's history, and the consequences of a particular construction.  *Id.*; *see* TEX. GOV'T CODE ANN. § 311.023(1), (3), (5) (West 2013).

Subsection 74.051(a) specifies that notice "must be accompanied by" the authorization form "as required under Section 74.052."  TEX. CIV. PRAC. & REM. CODE ANN. § 74.051(a).  Section 74.052 specifies that notice "must be accompanied by" an

authorization "in the form specified by this section." *Id.* § 74.052(a). Section 74.052

further specifies that the authorization "shall" be in the "following form." *Id.* § 74.052(c).

And the "following form" includes:

> B. The health information to be obtained, used, or disclosed extends to and includes the verbal as well as the written and is specifically described as follows:
>
> . . . .
>
> 2. The health information in the custody of the following physicians or health care providers who have examined, evaluated, or treated _____ (patient) during a period commencing five years prior to the incident made the basis of the accompanying Notice of Health Care Claim. (*Here list the name and current address of such physicians or health care providers, if applicable.*)

*Id.* (emphasis added).

When used in a statute, the term "must" creates or recognizes a condition

precedent and the term "shall" imposes a duty, unless the context in which the term

appears necessarily requires a different construction or unless a different construction is

expressly provided by statute. TEX. GOV'T CODE ANN. § 311.016(2), (3) (West 2013). Both

the terms "must" and "shall" are therefore generally recognized as mandatory, creating

a duty or obligation. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001). For

instance, in *Carreras*, the supreme court was presented with the issue of "whether notice

provided without an authorization form is considered to be given 'as provided' in

Chapter 74 and effective to toll the statute of limitations, or whether notice given without

an authorization form is insufficient to toll limitations." *Carreras*, 339 S.W.3d at 71. The

*Carreras* court pointed out that both sections 74.051(a) and 74.052(a) specify that notice "must be accompanied by" an authorization form. *Id.* at 72. The court stated that "must accompany" is a directive that creates a mandatory condition precedent. *Id.* The court therefore held, "If the authorization does not accompany the notice, then the benefit of the notice—tolling—may not be utilized." *Id.* The supreme court, however, has held language that appears to impose a mandatory duty to be only directory when that interpretation is most consistent with the Legislature's intent. *Id.* at 493-94 (citing as examples *Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 628-29 (Tex. 1996); *Lewis v. Jacksonville Bldg. & Loan Ass'n*, 540 S.W.2d 307, 310 (Tex. 1976); and *Thomas v. Groebl*, 147 Tex. 70, 212 S.W.2d 625, 630-31 (1948)).

The Ayerses contend that such an interpretation is appropriate here. They argue that extending *Carreras* and interpreting sections 74.051 and 74.052 such that notice is not "given as provided" in chapter 74 if there is *any* mistake in the authorization form, regardless of its negligibility, would lead to absurd results and would be inconsistent with the Legislature's intent. The Ayerses assert that they were therefore entitled to the tolling period because they substantially complied with sections 74.051 and 74.052.

"Substantial compliance" means that one has performed the "essential requirements" of a statute. *Harris County Appraisal Dist. v. Krupp Realty Ltd. P'ship*, 787 S.W.2d 513, 515 (Tex. App.—Houston [1st Dist.] 1990, no writ). If deviations from the performance required by statute do not seriously hinder the Legislature's purpose in

imposing the requirement, then there has been substantial compliance. *Id.* The Ayerses argue that their authorization did not seriously hinder the Legislature's purpose in imposing the notice requirement because it (1) tracked the language of section 74.052 verbatim, (2) permitted disclosure of Daryl's medical records to Appellants, and (3) permitted Appellants to obtain records from all of Daryl's other health care providers.

The Ayerses rely on *Mock v. Presbyterian Hosp. of Plano*, 379 S.W.3d 391 (Tex. App.—Dallas 2012, pet. denied), and *Rabatin v. Kidd*, 281 S.W.3d 558 (Tex. App.—El Paso 2008, no pet.),[6] to support their argument. In *Mock*, the plaintiffs gave the defendants notice of their health care liability claim and the authorization form prescribed by section 74.052; however, the plaintiffs completed one of the blanks in the authorization form incorrectly. *Mock*, 379 S.W.3d at 392, 394. The authorization form prescribed by section 74.052 begins:

> A. I, _____ (name of patient or authorized representative), hereby authorize _____ (name of physician or other health care provider to whom the notice of health care claim is directed) to obtain and disclose (within the parameters set out below) the protected health information described below for the following specific purposes. . . .

TEX. CIV. PRAC. & REM. CODE ANN. § 74.052(c); *Mock*, 379 S.W.3d at 394. Instead of putting the defendants' names in the second blank, the plaintiffs put the name of their own attorney. *Mock*, 379 S.W.3d at 394.

---

[6] This is one of three essentially identical opinions involving all the same issues. *See Rabatin v. Chavez*, 281 S.W.3d 567 (Tex. App.—El Paso 2008, no pet.); *Rabatin v. Vazquez*, 281 S.W.3d 563 (Tex. App.—El Paso 2008, no pet.).

The *Mock* plaintiffs, however, properly completed blanks requiring the same information in two other paragraphs in the authorization form. *Id.* at 395 n.2. The plaintiffs also filed summary-judgment evidence indicating that the defendants received some medical records and an additional release upon request after the plaintiffs sent their pre-suit notice and authorization form. *Id.* at 392 n.1. The evidence indicated that the defendants received the patient's medical records and the additional release within the seventy-five-day tolling period and before the plaintiffs filed suit. *Id.* Also, the defendants did not offer any evidence that they ever requested medical records that the plaintiffs refused to furnish or that the error in the plaintiffs' authorization form hampered their ability to investigate the claims in any respect. *Id.*

The plaintiffs in *Mock* argued that their claims were not time-barred because they successfully triggered the seventy-five-day tolling period. *Id.* at 394. The Dallas Court of Appeals agreed. *Id.* at 395. The court first distinguished *Nicholson* and *Mitchell*, discussed below, stating that the authorization form in this case tracked the statutory form completely and that the plaintiffs filled in all the blanks, albeit one of the blanks incorrectly. *Id.* The court then stated:

> We conclude appellants' medical authorization form correctly tracked the statutorily prescribed text. Although one blank was filled out incorrectly in what appears to have been an inadvertent mistake, the medical authorization form utilized complied with the statutory requirements, satisfied the legislative purpose, and triggered the tolling of the limitations period.

*Id.* at 395. The court further explained:

When a claimant provides the correct form with one blank filled out incorrectly, the claimant has demonstrated his intention to comply with the statute, and the error can be fixed quite easily. Any injury to the potential defendants from the delay is removed by the legislature's provision of an abatement of proceedings lasting until 60 days after a proper authorization is received. The abatement provides the opportunity for investigation and settlement that is potentially lacking when a claimant furnishes a medical authorization form with one blank incorrectly completed.

*Id.* at 395 n.3 (citations omitted).

In *Rabatin v. Kidd*, the plaintiffs sent a notice letter with an authorization form to one of the defendants, but the authorization form excluded the records of the doctors who had treated the patient within the five-year period before the treatment that was the basis of the claim and did not give the dates of treatment. 281 S.W.3d at 560. The plaintiffs subsequently sent notice letters with authorization forms to all of the defendants, but the authorization forms again excluded the records of the doctors who had treated the patient within the five years of the treatment that was the basis of the claim, did not give the dates of treatment, and did not provide who could access the records. *Id.* Counsel for one of the defendants was nevertheless able to use the subsequently sent authorization form to obtain the patient's records from the hospital where she had been admitted. *Id.*

The *Rabatin* plaintiffs argued that the foregoing was sufficient to toll the statute of limitations. *Id.* at 561. The El Paso Court of Appeals agreed. *Id.* at 562. The court stated in this pre-*Carreras* case that section 74.051 requires that the notice be accompanied by an authorization form to toll the limitations period. *Id.* (citing TEX. CIV. PRAC. & REM. CODE ANN. § 74.051(a), (c)). The court noted that that did happen here. *Id.* The court then

stated, "Tolling the statute of limitations when a notice letter and medical authorization form, albeit a[n] improperly filled out form, gives fair warning of a claim and an opportunity to abate the proceedings for negotiations and evaluation of the claim, which carries out the Legislature's intent in enacting the statute." *Id.* The court thus held that the initial notice letter sent with the authorization form to one of the defendants was sufficient to toll the statute of limitations as to all of the defendants through constructive notice while the subsequent notice letters sent with authorization forms provided actual notice to all of the defendants. *Id.*

On the other hand, Appellants contend that, because the Ayerses failed to list any of the names and addresses of Daryl's treating physicians or health care providers during the five years before the incident made the basis of this suit, the authorization was essentially "meaningless." Appellants assert that, without a claimant providing the identity of a patient's treating physicians or health care providers for the five years before the incident made the basis of the notice of health care claim, the defendant does not know from whom or from where to obtain the protected health information. Appellants claim that, absent the information, the defendant is therefore deprived of the opportunity to explore the patient's past medical history for purposes of evaluating (and potentially settling) the claim and that the authorization form does not therefore substantially comply with sections 74.051 and 74.052.

Appellants rely on several cases from two other sister courts to support their

argument.  In *Nicholson v. Shinn*, No. 01-07-00973-CV, 2009 WL 3152111 (Tex. App.—Houston [1st Dist.] Oct. 1, 2009, no pet.) (mem. op.), the plaintiff sent the defendant a notice letter, but it was not accompanied by an authorization form.  *Id.* at *4.  The plaintiff subsequently sent the defendant a "medical authorization release form" but neglected to include information on the patient's physicians for the previous five years.  *Id.* at *4-5. The plaintiff then served the defendant's insurance carrier with the authorization form prescribed by section 74.052, but the form was "similarly lacking."  *Id.*  "There, [the plaintiff] also neglected to complete the section identifying her treating physicians or the section authorizing the physician or other health care provider to obtain and disclose her health care information."  *Id.* at *5.

The *Nicholson* plaintiff argued that she substantially complied with the statute and that that was sufficient to toll the statute of limitations, but the First Court of Appeals disagreed.  *Id.* at *5-6.  The court first concluded in this pre-*Carreras* case that the initial notice letter was "clearly defective because it violate[d] a mandatory provision," *i.e.*, section 74.051's requirement that notice "must" be accompanied by the section 74.052 authorization form.  *Id*. at *5.  The court then concluded that the plaintiff also failed to substantially comply with sections 74.051 and 74.052 with her two authorization forms because she overlooked that the required authorization must include a form authorizing the physician or other health care provider "to obtain and disclose … the protected health information" and a form for the patient to identify her treating physicians for the past

five years. *Id.* at *5-6. The court stated that the plaintiff's two authorization forms

> did not comport with the Legislature's stated intent of encouraging pre-suit negotiations and avoiding unnecessary litigation. Specifically, [the plaintiff's] failure to list her treating physicians for the past five years essentially rendered [the plaintiff's] authorizations meaningless because such an omission discouraged defendants from undertaking an investigation to evaluate [the plaintiff's] claims.

*Id.* at *6. The court further noted that the plaintiff's serving of the second authorization form on only the defendant's insurance provider did not satisfy the plain language of subsection 74.052(a)'s notice requirement. *Id.*

In *Mitchell v. Methodist Hosp.*, 376 S.W.3d 833 (Tex. App.—Houston [1st Dist.] 2012, pet. denied), the plaintiffs provided the defendants with notice of their health care liability claims, but, instead of providing the authorization form prescribed by section 74.052, the notice was accompanied by an authorization form compliant with the federal Health Insurance Portability and Accountability Act (HIPAA). *Id.* at 834. The HIPAA form deviated from the subsection 74.052(c) form in at least two ways: (1) it did not specifically identify the defendants as entities authorized to obtain protected health information and (2) it did not identify the patient's treating physicians for the five years before "the incident made the basis of the accompanying Notice of Health Care Claim." *Id.* at 837 (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 74.052(c)).

The *Mitchell* plaintiffs argued that substantial compliance with the notice requirement was sufficient to toll limitations and that the HIPAA form substantially complied with section 74.052 because it granted all of the patient's health care providers

"carte blanche" to disclose his protected health information. *Id.* The plaintiffs also asserted that their substantial-compliance argument was buttressed by the defendants' use of the form to produce their own medical records without objection for more than three years. *Id.* Citing *Nicholson*, however, the First Court of Appeals concluded that it had already rejected the plaintiffs' argument. *Id.* The court stated, "Like the *Nicholson* claimant, the [plaintiffs] neglected to comply with both the treating-physicians-disclosure requirement and the authorization-to-obtain-records requirement; therefore, their medical authorization form does not comport with the Legislature's stated intent of encouraging presuit investigation, negotiation, and settlement." *Id.* at 838.

The First Court of Appeals was unpersuaded by the fact that the defendants were able to provide the plaintiffs with copies of the protected health information in their own files. *Id.* The court explained that, for tolling to apply, the authorization form must provide authorization to retrieve the patient's medical records from *other* medical providers so that the defendants can evaluate the strength of the plaintiffs' claim with the legislative goal of encouraging settlement. *Id.* The court also rejected an argument by the plaintiffs that, even if their authorization form was defective, the defendants waived any statutory right that they could have asserted by failing to object to the form and to request abatement of the lawsuit. *Id.* at 838-39. More specifically, the plaintiffs contended that abatement—not the dismissal of their health care liability claim on summary judgment—was the defendants' only remedy. *Id.* at 838. The court explained that the

supreme court in *Carreras* rejected this interpretation of subsection 74.052(a)'s abatement provision as unreasonable in situations in which the tolling provision is at issue. *Id.* (citing *Carreras*, 339 S.W.3d at 73). The *Carreras* court stated:

> [T]he abatement has a use in situations in which the tolling provision is not at issue. If notice is provided without an authorization well within the statute of limitations, and the case could be filed sixty days later and still fall within the limitations period, the defendant's statutory remedy is to halt proceedings until an authorization form is received.

*Carreras*, 339 S.W.3d at 73-74. The *Mitchell* court therefore concluded that the abatement provision had no application because the plaintiffs' suit could not have been abated and still filed within the limitations period. *Mitchell*, 376 S.W.3d at 839.

In *Brannan v. Toland*, No. 01-13-00051-CV, 2013 WL 4004472 (Tex. App.—Houston [1st Dist.] Aug. 6, 2013, pet. denied) (mem. op.), the plaintiffs sent the defendants a notice of health care liability claim, but, rather than providing the authorization form prescribed by section 74.052, the plaintiffs attached a signed, but otherwise blank, HIPAA medical records release authorization form. *Id.* at *1. In the notice letter, the plaintiffs stated that they had attached the form to authorize the defendant physician to release the patient's medical records to the plaintiffs' attorney. *Id.* The plaintiffs argued that they provided sufficient notice of their claim in substantial compliance with sections 74.051 and 74.052. *Id.* The First Court of Appeals, however, noted the similarity with *Mitchell*. *Id.* at *3. The court thus concluded that, as in *Mitchell*, because the form did not list any treating physicians for the five years preceding the claim and did not authorize the defendants to

obtain medical records from those providers, as required by section 74.052, the plaintiffs failed to give proper notice under sections 74.051 and 74.052, and the statute of limitations was not tolled under section 74.051. *Id.* at *2-3.

Finally, in *Myles v. St. Luke's Episcopal Hosp.*, 468 S.W.3d 207 (Tex. App.—Houston [14th Dist.] 2015, pet. denied), the plaintiff sent the defendant a notice of health care liability claim along with the authorization form prescribed by section 74.052. *Id.* at 208. The beginning of the plaintiff's authorization form tracked the statutorily prescribed text, but it then deviated from subsection 74.052(c) in at least two ways: (1) it did not identify the plaintiff's treating physicians for the five years before "the incident made the basis of the accompanying Notice of Health Care Claim" and (2) it did not identify the physicians to whom the authorization did not apply. *Id.* at 210 (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 74.052(c)). The plaintiff argued that the seventy-five-day tolling provision should nonetheless apply because his form substantially complied with section 74.052. *Id.* The plaintiff contended that the omission was immaterial because he was admitted to the defendant hospital so "there was no doubt as to who the health care providers were." *Id.* Relying on *Nicholson* and *Mitchell*, however, the Fourteenth Court of Appeals concluded that the plaintiff's authorization form failed to substantially comply with sections 74.051 and 74.052. *Id.* The court stated, "We agree with our sister court that the missing information in this case interfered with the statutory design to enhance presuit investigation, negotiation, and settlement and that therefore the form was insufficient to

toll the statute of limitations." *Id.* at 211.

After considering the foregoing arguments and authorities, and the record before us, we conclude that the Ayerses' authorization form did not substantially comply with sections 74.051 and 74.052. We are persuaded by *Nicholson*, *Mitchell*, *Brannan*, and *Myles* that failing to list any of the names and addresses of a patient's treating physicians or health care providers during the five years before the incident made the basis of the notice of health care claim seriously hinders the statutory design to enhance pre-suit investigation, negotiation, and settlement. *See also Johnson v. PHCC-Westwood Rehab. & Health Care Ctr., LLC*, No. 01-15-01106-CV, 2016 WL 4406231, at *4-5 (Tex. App.—Houston [1st Dist.] Aug. 18, 2016, no. pet. h.).

The Ayerses attempt to distinguish *Nicholson*, *Mitchell*, *Brannan*, and *Myles*. The Ayerses assert that, unlike the plaintiffs in *Nicholson* and *Myles*, they did not leave any of the fields in their authorization form completely blank and Appellants were not "discouraged" by the error in the authorization form because, as in *Rabatin*, they could actually use the authorization form to obtain the health information that they needed. Additionally, the Ayerses assert that, unlike the plaintiffs in *Mitchell* and *Brannan* who used a HIPAA-compliant general medical records release form, they provided an authorization form that tracked the exact language of subsection 74.052 and allowed Appellants access to "ALL HEATH [*sic*] CARE PROVIDERS PROVIDING CARE/TREATMENT TO DARYL LYNN AYERS."

But although the Ayerses' authorization form and the authorization forms in *Nicholson*, *Mitchell*, *Brannan*, and *Myles* are not identically noncompliant with the authorization form prescribed by subsection 74.052(c), the plaintiffs in *Nicholson*, *Mitchell*, *Brannan*, and *Myles*, and the Ayerses in this case, all failed to list in the authorization forms the name and current address of any health care provider who examined, evaluated, or treated the patient during the five years before the incident that was the basis of the notice of health care claim. Furthermore, even if an authorization form is technically capable of being used to obtain a patient's protected health information, failing to identify from whom or from where to obtain the protected health information seriously interferes with the statutory design to enhance pre-suit investigation, negotiation, and settlement.

The supreme court stated in *Carreras* that the purpose of section 74.051's notice provision "is to encourage negotiations and settlement of disputes prior to suit, thereby reducing litigation costs." *Carreras*, 339 S.W.3d at 73 (citing *Garcia v. Gomez*, 319 S.W.3d 638, 643 (Tex. 2010)). The supreme court further explained: "The Legislature intended that 'by requiring a potential claimant to authorize the disclosure of otherwise privileged information sixty days before suit is filed, the statute [would] provide[ ] an opportunity for health care providers to investigate claims and possibly settle those with merit at an early stage.'" *Id.* (quoting *In re Collins*, 286 S.W.3d 911, 916-17 (Tex. 2009)). The "otherwise privileged information" that a potential claimant is required to authorize the

disclosure of includes the protected health information in the custody of physicians or health care providers who have examined, evaluated, or treated the patient during the five years before the incident that is the basis of the notice of health care claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.052(c). The purpose of authorizing potential defendants to obtain this specific protected health information is to provide the potential defendants the opportunity to explore the patient's past medical history, including preexisting conditions, for purposes of evaluating and potentially settling the claim. *See Mitchell*, 376 S.W.3d at 838.

By omitting from the authorization form the list of the patient's treating physicians for the previous five years, the authorization form fails to identify where the protected health information might be located. This seriously hinders potential defendants from exploring the patient's past medical history for the statute's purposes. *See Myles*, 468 S.W.3d at 210-11; *Mitchell*, 376 S.W.3d at 838; *Nicholson*, 2009 WL 3152111, at *6. And the purpose of the notice requirement and the pre-suit negotiation period triggered by the notice requirement are not fulfilled if potential defendants are deprived of the opportunity to explore the patient's past medical history for the statute's purposes. *Mitchell*, 376 S.W.3d at 838; *see Carreras*, 339 S.W.3d at 73.

Also, the Ayerses' reliance on *Rabatin* is misplaced. The *Rabatin* court, in concluding that the authorization form was sufficient to toll the statute of limitations, reasoned that the notice letter and improperly filled-out authorization form gave fair

warning of a claim and an opportunity to abate the proceedings for negotiations and evaluation of the claim, thereby carrying out the Legislature's intent. *Rabatin*, 281 S.W.3d at 562. *Rabatin*, however, was decided before *Carreras*. The supreme court in *Carreras* explained:

> [T]he abatement has a use in situations in which the tolling provision is not at issue. If notice is provided without an authorization well within the statute of limitations, and the case could be filed sixty days later and still fall within the limitations period, the defendant's statutory remedy is to halt proceedings until an authorization form is received.

*Carreras*, 339 S.W.3d at 73-74. Therefore, as explained in *Mitchell*, the abatement provision has no application in this case because the Ayerses' suit could not have been abated and still filed within the limitations period. *See Mitchell*, 376 S.W.3d at 839.

In addition to attempting to distinguish *Nicholson*, *Mitchell*, *Brannan*, and *Myles*, the Ayerses also complain that their authorization form substantially complied with sections 74.051 and 74.052 because, as in *Mock*, Appellants did not present any evidence that the authorization form actually hindered their ability to obtain medical records or otherwise evaluate the Ayerses' claim before suit was filed. The Ayerses assert that the evidence instead shows that the authorization form was actually able to be used to obtain at least some of the records necessary to evaluate the claim. The Ayerses point to a letter from Dr. Bull and Hillcrest's legal counsel, which states, "You have provided us with a Medical Authorization which we can use to obtain medical records to evaluate on the claim. We are in the process of obtaining medical records from providers outside of our

system." The Ayerses also point to Dr. Plante's responses to the Ayerses' request for disclosure in which he states, "Defendant has records obtained with authorization. All parties have notice of these records." Additionally, the Ayerses note in their brief that Dr. Bull had been Daryl's primary care physician since 2000 and "therefore would have likely had access to the bulk of [Daryl's] medical records for the previous five years, as well as any records referring [Daryl] to other specialists."

The *Myles* court, however, rejected a similar argument. *See Myles*, 468 S.W.3d at 210-11. Furthermore, "substantial compliance" does not permit a party to ignore statutory requirements. *Methodist Hosps. of Dallas v. Mid-Century Ins. Co. of Tex.*, 259 S.W.3d 358, 360 (Tex. App.—Dallas 2008, no pet.). The courts possess no legislative powers; therefore, the courts cannot excuse plaintiffs' noncompliance with statutory requirements merely because defendants, despite plaintiffs' noncompliance, are able to accomplish some of the Legislature's purpose in imposing the statutory requirements. Although we may hold statutory language that appears to impose a mandatory duty to be only directory when that interpretation is most consistent with the Legislature's intent, a party must still have performed the essential requirements of the statute for the party to have substantially complied with it. *See, e.g., Conn, Sherrod & Co. v. Tri-Elec. Supply Co.*, 535 S.W.2d 31, 34-35 (Tex. Civ. App.—Tyler 1976, writ ref'd n.r.e.) (holding that liberal interpretation and substantial compliance did not allow courts to alter meaning of statutory language and that timely filing of affidavit without correct jurat was not

substantial compliance as required to perfect materialman's lien). And, as discussed above, we conclude that an essential requirement of sections 74.051 and 74.052 is listing in the authorization form the name and current address of any health care provider who examined, evaluated, or treated the patient during the five years before the incident that was the basis of the notice.

The Ayerses' reliance on *Mock* is also misplaced. In *Mock*, the plaintiffs filled out one blank incorrectly—an "inadvertent mistake"—in an authorization form that otherwise complied with the form prescribed by section 74.052. *Mock*, 379 S.W.3d at 394-95. The plaintiffs properly completed blanks requiring the same information in two other paragraphs in the authorization form. *Id.* at 395 n.2. Here, however, where the statutorily prescribed authorization form states to "list the name and current address" of the physicians or health care providers who had examined, evaluated, or treated Daryl during the five years before the incident made the basis of the notice, the Ayerses stated "ALL HEATH [*sic*] CARE PROVIDERS PROVIDING CARE/TREATMENT TO DARYL LYNN AYERS." The Ayerses completely failed to identify any of Daryl's physicians or health care providers for the previous five years.

The Ayerses assert in a footnote that Appellants did not conclusively prove that the Ayerses were required to identify any health care providers because they did not present any evidence that Daryl had any health care providers in the five years preceding his death. The Ayerses point out that the authorization form prescribed by subsection

74.052(c) states to "list the name and current address of such physicians or health care providers, *if applicable*." TEX. CIV. PRAC. & REM. CODE ANN. § 74.052(c) (emphasis added). But the Ayerses' authorization form itself is evidence that Daryl had health care providers during the five years before the incident. Where the Ayerses were directed in the authorization form to "list the name and current address of such physicians or health care providers," the Ayerses stated "ALL HEATH [*sic*] CARE PROVIDERS PROVIDING CARE/TREATMENT TO DARYL LYNN AYERS." This indicates that there were health care providers who provided care and treatment to Daryl.

In light of the foregoing, we conclude that the Ayerses' authorization form did not substantially comply with sections 74.051 and 74.052 and was therefore insufficient to toll the statute of limitations. The trial court thus erred in denying Appellants' motions for summary judgment on that specified ground. We sustain Appellants' sole issue.

The Ayerses contend that Dr. Bull's and Hillcrest's motion for summary judgment should nevertheless have been denied because a fact issue exists as to whether Dr. Bull and Hillcrest should be estopped from asserting the statute of limitations. We need not address this issue. The trial court did not deny their summary judgment motion on this ground, and subsection 51.014(d) does not authorize an interlocutory appeal when the trial court does not substantively rule on the controlling legal issue being appealed. *Borowski*, 432 S.W.3d at 347; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(d).

We reverse the trial court's order denying Appellants' motions for summary

judgment and remand the cause to the trial court for further proceedings consistent with

this opinion.



REX D. DAVIS<br>Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Reversed and remanded
Opinion delivered and filed October 12, 2016
[CV06]

