# Supreme Court of Texas

════════════

No. 22-0435

════════════

Dorothy Hampton,

*Petitioner*,

v.

Leonard Thome,

*Respondent*

════════════════════════

On Petition for Review from the
Court of Appeals for the Ninth District of Texas

════════════════════════

**Argued September 14, 2023**

JUSTICE BLACKLOCK delivered the opinion of the Court, in which Chief Justice Hecht, Justice Lehrmann, Justice Devine, Justice Busby, Justice Bland, Justice Huddle, and Justice Young joined.

JUSTICE BOYD filed a dissenting opinion.

The Legislature requires "[a]ny person . . . asserting a health care liability claim" to "give written notice of such claim" to certain defendants "at least 60 days before the filing of a suit." TEX. CIV. PRAC. & REM. CODE § 74.051(a). The notice "must be accompanied by a medical authorization in the form specified by" section 74.052. *Id*. § 74.052(a).

This medical authorization form enables the defendant to obtain the plaintiff's medical records from other health care providers.

The notice required by section 74.051(a) can affect the statute of limitations as follows: "Notice given as provided in this chapter shall toll the applicable statute of limitations to and including a period of 75 days following the giving of the notice." *Id.* § 74.051(c). This Court held in *Jose Carreras, M.D., P.A. v. Marroquin* that when a plaintiff gives the notice without a medical authorization form, the 75-day tolling period is unavailable. 339 S.W.3d 68, 74 (Tex. 2011).

In today's case, the notice was accompanied by a medical authorization form closely resembling the one required by the Legislature. Relying on the tolling provision, the plaintiff filed suit outside the usual statute of limitations but within the 75-day tolling period offered by section 74.051(c). After discovery, the defendant contended that the plaintiff's medical authorization form omitted some of the required health care providers and omitted a provision authorizing disclosure of information by the plaintiff's future health care providers. The defendant argued that these deficiencies in the form meant that the 75-day tolling period never applied, which meant that sixteen months of litigation had all been for nothing because the suit was filed outside the limitations period. The trial court rejected this argument, but the court of appeals reversed, holding that the 75-day tolling period had all along been unavailable due to deficiencies in the medical authorization form the plaintiff served at the beginning of the case. ___ S.W.3d ___, 2022 WL 802562, at *6 (Tex. App.—Beaumont Mar. 17, 2022).

We hold that an imperfect medical authorization form is nevertheless a medical authorization form, which is sufficient to toll the statute of limitations for 75 days under section 74.051(c). The plaintiff in a health care liability claim has a statutory obligation to proactively notify the defendant of the health care providers required to be disclosed in the authorization form. A mistake or omission in this regard is not without consequence, and courts should certainly never countenance *deliberate* defiance of a statute's clear commands. When it comes to calculating the deadline for filing suit, however, Texas law favors bright-line rules that enable parties and courts to know with certainty—as early in the litigation as possible—whether the suit is time-barred. Whatever imperfections or omissions existed in the plaintiff's medical authorization form in this case, it was genuinely a medical authorization form resembling the one required by the Legislature, and the plaintiff served it with the notice of claim. This was sufficient, as we understand this statutory scheme, to trigger the 75-day tolling period, which means the suit was timely.

Any defects or omissions in the medical authorization form that came to light during the litigation could have been adequately addressed by the statutory remedy of abatement, by additional discovery, or even—where departure from the statutory requirements is deliberate or in bad faith—by sanctions up to and including dismissal. The limitations period, however, is a threshold matter that should, whenever possible, be established with clarity at the outset. We do not understand Chapter 74 to require courts to entertain satellite litigation over whether the

3

statute of limitations was actually never tolled because defects were later discovered in the plaintiff's medical authorization form.

The judgment of the court of appeals is reversed, and the case is remanded to the court of appeals to consider the defendant's remaining arguments for reversal of the district court's judgment.

## I.

On March 25, 2014, Dorothy Hampton went to the Medical Center of Southeast Texas with abdominal pain in her left side. She was diagnosed with an abdominal hernia, and she underwent surgery the next day. Two days later, Dr. Leonard Thome decided to release her from the hospital. That night, Hampton fell at home and was found on the floor the next day, confused and disoriented. She was quickly readmitted to the hospital, and when asked about the fall, Hampton claimed she could not remember the past 24 hours. Hampton was released to a nursing facility after several more days in the hospital.

On November 9, 2015, Hampton's lawyer sent a letter to Dr. Thome notifying him of Hampton's intent to bring a health care liability claim alleging that Hampton was released prematurely from the hospital. The letter claimed that Hampton developed pain in her right shoulder after her fall and began treatment at Beaumont Bone and Joint Institute. Attached to the letter was a medical authorization form permitting Dr. Thome to obtain Hampton's health information from the listed providers. *See* TEX. CIV. PRAC. & REM. CODE § 74.052(c). The authorization form listed two providers—the Medical Center of Southeast Texas and Beaumont Bone and Joint Institute.

4

Hampton sued on May 31, 2016, alleging that Dr. Thome's negligent decision to release Hampton from the hospital caused Hampton's fall and led to permanent mental and physical injury. Because the events in question occurred in March 2014, the usual two-year time clock had run out by the time Hampton sued. Hampton's petition, however, contended that her timely notice of the claim tolled the statute of limitations for 75 days under section 74.051(c) of the Civil Practice and Remedies Code.

After over a year of discovery, Dr. Thome moved in August 2017 for summary judgment on limitations grounds. He contended that the limitations period expired on March 28, 2016, and that Hampton's notice had not tolled the statute of limitations because it was accompanied by a deficient medical authorization form. Dr. Thome alleged that the medical authorization form failed to meet three statutory requirements: (1) it omitted a required provision authorizing Dr. Thome to obtain records from providers who would treat Hampton after the date of the authorization form; (2) it did not list several providers who treated Hampton in connection with her alleged injuries; and (3) it did not list several providers who had treated Hampton in the five years preceding the incident.

The district court denied Dr. Thome's motion for summary judgment. A jury trial proceeded on May 6, 2019. The jury found that Dr. Thome's negligence proximately caused Hampton's injuries and returned a $555,678 verdict. The court rendered a final judgment of $255,678, plus interest and costs, in keeping with the statutory limit on noneconomic damages for health care liability claims. *See id.* § 74.301.

5

Dr. Thome filed a motion for judgment notwithstanding the verdict, in which he reiterated his argument that the claims were barred by limitations because of deficiencies in the medical authorization form. The court denied the motion, reasoning that Dr. Thome had not shown prejudice caused by the deficiencies in the form.

The court of appeals reversed. It held that the form Hampton provided to Dr. Thome was insufficient to trigger the 75-day tolling period because it fell "well short of authorizing Dr. Thome to obtain the scope of information he was entitled to obtain." 2022 WL 802562, at *5. The court of appeals found that the form listed "only two of Hampton's thirteen health care providers" that treated Hampton for her injuries or had seen her in the five-year period preceding the incident. *Id.* at *6. It further found that the form failed to include "language that extends [the release authorization] to health care providers that treated Hampton after the date Hampton signed the release" as directed by the statute. *Id.* The court of appeals held that tolling was unavailable because the defects in Hampton's form were at least as severe as the defects identified in several other appellate decisions in which tolling was denied. *Id.* The court of appeals rendered judgment against Hampton because, with the tolling provision unavailable, the two-year statute of limitations barred her suit.

## II.

We begin by noting that Hampton's lawyer could have insulated his client's claims from any question of timeliness by filing suit within the usual two-year limitations period rather than relying on the statute's 75-day tolling provision. Neither the record on appeal nor

counsel's statements at oral argument reveal any reason the extra 75 days were needed. By relying on the tolling provision, Hampton's counsel added to the defendant's arsenal of arguments in exchange for little apparent benefit to Hampton. Regardless of how this appeal is resolved, the decision to pin Hampton's entire case on the availability of the 75-day tolling period has generated extensive additional litigation that remains pending seven years after the suit was filed and that could, it appears, have easily been avoided altogether by a slightly earlier filing. Statutes of limitation are harsh, and the practice of waiting until the last conceivable moment to file a lawsuit is fraught with peril, particularly when the plaintiff relies on a tolling theory about which there is even the slightest doubt.

Be that as it may, the history of this litigation cannot be undone, and we must confront the question of what effect, if any, the deficiencies in Hampton's medical authorization form have on the application of section 74.051(c)'s 75-day tolling period.

As with any question of statutory interpretation, we begin with the statute's text. *Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 45 (Tex. 2015). "Health care liability claims" are subject to Chapter 74 of the Civil Practice and Remedies Code. Section 74.051(a) imposes a pre-suit notice requirement:

> Any person or his authorized agent asserting a health care liability claim shall give written notice of such claim by certified mail, return receipt requested, to each physician or health care provider against whom such claim is being made at least 60 days before the filing of a suit in any court of this state based upon a health care liability claim. The notice must be accompanied by the authorization form for

7

release of protected health information as required under
Section 74.052.

TEX. CIV. PRAC. & REM. CODE § 74.051(a). The statute of limitations for health care liability claims is two years. *Id.* § 74.251(a). Perhaps because the 60-day pre-suit notice requirement may have the practical effect of truncating the time available to a plaintiff to investigate and prepare his suit, the Legislature provided a brief tolling period:

> Notice given as provided in this chapter shall toll the applicable statute of limitations to and including a period of 75 days following the giving of the notice, and this tolling shall apply to all parties and potential parties.

*Id.* § 74.051(c).

Section 74.052(a) reiterates section 74.051(a)'s requirement that a medical authorization form must accompany the pre-suit notice: "Notice of a health care claim under Section 74.051 must be accompanied by a medical authorization in the form specified by this section." It then provides an abatement remedy for the defendant when the plaintiff does not provide the required medical authorization:

> Failure to provide this authorization along with the notice of health care claim shall abate all further proceedings against the physician or health care provider receiving the notice until 60 days following receipt by the physician or health care provider of the required authorization.

*Id.* § 74.052(a). Section 74.052 goes on to lay out, in great detail, the precise contents of the medical authorization form that must accompany the pre-suit notice. *Id.* § 74.052(c).

### III.

Several years ago, this Court in *Jose Carreras, M.D., P.A. v. Marroquin* held that mere service of pre-suit notice without the required

8

authorization form is insufficient to trigger the statute's 75-day tolling provision. 339 S.W.3d at 74. In that case, the plaintiffs failed to send any medical authorization form before the statute of limitations expired. *Id.* at 70. We held that a plaintiff must provide both the notice of claim and the medical authorization form to obtain tolling. *Id.* at 74. We did not, however, address whether notice accompanied by a medical authorization form that turns out to be incomplete or erroneous is sufficient to trigger tolling. Today's case asks that question.

Decisions of the courts of appeals on the question have varied. Some essentially hold that most errors or omissions in the authorization form render the 75-day tolling period unavailable. *See, e.g., Borowski v. Ayers*, 524 S.W.3d 292, 304–06 (Tex. App.—Waco 2016, pet. denied); *Tanhui v. Rhodes-Madison*, No. 12-20-00240-CV, 2021 WL 1916819, at *3 (Tex. App.—Tyler May 12, 2021, no pet.); *Salinas v. Methodist Healthcare Sys.*, No. 07-19-00026-CV, 2019 WL 3807871, at *2–3 (Tex. App.—Amarillo Aug. 13, 2019, no pet.).

Other courts have looked to whether the deficiencies in the authorization form frustrate the defendant's ability to conduct the pre-suit investigation envisioned by the statute. *See, e.g., Davenport v. Adu-Lartey*, 526 S.W.3d 544, 554 (Tex. App.—Houston [1st Dist.] 2017, pet. denied); *Colia v. Ewing*, No. 02-19-00109-CV, 2020 WL 241978, at *3 (Tex. App.—Fort Worth Jan. 16, 2020, pet. denied). Yet another court has asked whether any errors or omissions in the medical authorization form ultimately prejudiced the defendant. *Maypole v. Acadian Ambulance Serv., Inc.*, 647 S.W.3d 533, 550 (Tex. App.—Dallas 2022,

9

pet. dism'd by agr.).[1]  One court of appeals found an authorization form sufficient for tolling purposes even though "the authorization forms excluded the doctors' records who had treated her within five years of the treatment listed as forming the basis of the claim." *Rabatin v. Kidd*, 281 S.W.3d 558, 562 (Tex. App.—El Paso 2008, no pet.).

While none of these decisions is an unreasonable application of Chapter 74 and this Court's precedent, most of the approaches adopted by the courts of appeals share the same two drawbacks.  First, they facilitate protracted litigation and appeals that embroil the litigants and the courts in lengthy and costly debates about the contents of a pre-suit discovery form rather than debates about the merits of the claims.[2] Where possible, courts should seek to discourage non-merits satellite litigation of this nature unless a statute or the Constitution requires it. Second, the approach adopted by some courts of appeals subjects the statute of limitations to retroactive adjustment based on fact-intensive determinations made later in the litigation.  But particularly "in the area of limitations, bright-line rules generally represent the better approach." *Erikson v. Renda*, 590 S.W.3d 557, 566 (Tex. 2019).  Ideally,

---

[1] We granted the petition for review in *Maypole* and set the case for oral argument in conjunction with Hampton's case.  The parties in *Maypole*, however, settled their differences before oral argument, and we dismissed the appeal at their request.  *See* TEX. R. APP. P. 42.1(a)(2).

[2] This case vividly demonstrates the problem: Sixteen months after the medical authorization form was served, after many months of discovery, the defendant first raised the argument that the suit must be dismissed on limitations grounds because the form was incomplete.  We do not criticize the defense, which relied on several appellate decisions supporting its tactic.  Yet here we are, over six years later, and the parties are still debating the sufficiency of the initial form rather than the merits of Hampton's claims.

the deadline to sue should always be calculable with certainty at the outset of the case and should never vary retroactively depending on the outcome of later litigation. Perfect certainty at the outset may not always be possible, particularly when applying tolling provisions, but we should prefer clarity in this area whenever it can be had.

*Carreras* provides a bright-line rule, which can be applied with certainty at the outset of the litigation: If *no* medical authorization form accompanies the notice, the 75-day tolling provision is not triggered. Yet what happens when there is a medical authorization form, but it turns out to be incomplete or erroneous? The existence of such deficiencies will often not be known until later in the litigation, sometimes much later. If Chapter 74's text required courts to determine the limitations period by answering questions like whether the authorization form turns out to have omitted required providers or whether any such omissions prejudiced the defendant, then courts would be obligated to do so even if we think that such an approach increases wasteful litigation and blurs lines that are better left bright. By our reading, however, Chapter 74 contains no such requirement. Instead, it offers temporary abatement as a remedy for the plaintiff's failure to disclose providers as required. And it requires only that *a* medical authorization form accompany the pre-suit notice, not that a *perfect* medical authorization form do so.

Begin with the tolling provision itself, section 74.051(c). The rule is simple: "Notice given as provided in this chapter shall toll the applicable statute of limitations [for 75 days]." It is thus the *notice*, not the medical authorization form, that triggers tolling. The authorization

11

form is not irrelevant to the tolling question, however. Section 74.051(a) provides that the notice must "be accompanied by the authorization form . . . as required under Section 74.052." Section 74.052(a) likewise dictates that the notice "must be accompanied by a medical authorization in the form specified by this section." Relying on these provisions, we held in *Carreras* that a notice without the required authorization form is not "[n]otice given as provided in this chapter" and therefore does not trigger tolling. 339 S.W.3d at 72–73.

The statute does not say how an incomplete or erroneous authorization form affects the tolling question.[3] It does, however, contemplate that an authorization form may need to be "modified" after it has first been served. *See* TEX. CIV. PRAC. & REM. CODE § 74.052(b). Of course, only a form that turns out to have been erroneous or incomplete in some respect would need to be modified. And when

---

[3] The dissent says the Court is relying on "policy" or "purpose-based" arguments to achieve "a judicial rewriting of the statute." *Post* at 10 (Boyd, J., dissenting). Obviously not. We have rejected any such approach to statutory interpretation on many occasions, and we do so again today. Our disagreement with the dissent is not over statutory-interpretation methodology. Instead, the disagreement is over which questions this statute answers. The dissent believes, wrongly we think, that the statutory text tells us how an erroneous authorization form affects the tolling question. We conclude that the text does not answer that question, although as we explain below, the text does provide some indication that retroactive revocation of tolling for erroneous authorization forms is not its envisioned result. Trying to squeeze blood from an orange by forcing the text to definitively answer a question it does not answer is just as much "a judicial rewriting of the statute" as anything else. Answering a question the statutory text does not answer naturally may involve consideration of matters outside the text, such as the prudential notion that early and definitive identification of the limitations deadline is preferable, when possible, to protracted non-merits satellite litigation about the content of a discovery form.

12

modification is necessary, the statute states the consequence—a 60-day abatement, at the request of the defendant:

> If the authorization required by this section is modified or revoked, the physician or health care provider to whom the authorization has been given shall have the option to abate all further proceedings until 60 days following receipt of a replacement authorization that must comply with the form specified by this section.

*Id.*[4] The statute states its own remedy for an incomplete or erroneous medical authorization form—abatement—and in the absence of a textual indication otherwise, we will not impose the additional remedy of deeming an incomplete or erroneous form to be no form at all for tolling purposes. Beyond the statutory remedy of abatement for additional discovery, sanctions may also be an appropriate response to *deliberate* evasion of the statutory requirements. But we see nothing in the statute indicating that an incomplete or erroneous medical authorization form should be considered no form at all for tolling purposes.

The distinction between an incomplete or erroneous form, as is the case here, and an altogether absent form, as was the case in *Carreras*, resembles a distinction on which we previously relied in *Ogletree v. Matthews*, another Chapter 74 case. 262 S.W.3d 316 (Tex. 2007). Section 74.351 requires a health care liability claimant to serve an expert report by a certain time. If the report is timely but deficient,

---

[4] Similarly, the complete failure to provide an authorization form will "abate all further proceedings . . . until 60 days following receipt by the physician or health care provider of the required authorization." TEX. CIV. PRAC. & REM. CODE § 74.052(a).

the court can grant a 30-day extension to cure that deficiency. TEX. CIV. PRAC. & REM. CODE § 74.351(c). In *Ogletree*, the defendant argued that the plaintiff should not get the 30-day extension because the expert report was of the wrong kind altogether; it contained testimony from nurses rather than from a physician. 262 S.W.3d at 318–19. Because no real "report" was served in the first place, the argument went, the court could not grant the 30-day extension. *Id*. We disagreed, because "a deficient report differs from an absent report." *Id*. at 320.

Similar reasoning applies here. A partially inaccurate or incomplete medical authorization form is nevertheless a medical authorization form. And the medical authorization form proffered by Hampton, which resembles the statutorily required form, is "in the *form* specified by" section 74.052, even if its substance contains errors or omissions. TEX. CIV. PRAC. & REM. CODE § 74.052(a) (emphasis added). We cannot say that the existence of errors or omissions in a medical authorization form means that no notice *at all* has been "given as provided in this chapter." *Id*. § 74.051(c). When no authorization form is offered at all, there has obviously been no attempt to give notice "as provided in this chapter." But when a medical authorization form has been served, and when this has generally been done "in the *form* specified by" section 74.052, then notice has been "given as provided in this chapter"—even if the substance of the form contains deficiencies.

In the absence of more explicit guidance from the Legislature, we will not infer from this statutory scheme either (1) a rule that only fully accurate authorization forms trigger tolling, or (2) a rule that bars tolling if inaccuracies in the authorization form prejudice the defendant.

14

The best indication provided by the statutory text is to the contrary. When the authorization form requires modification—as incomplete or erroneous forms naturally would—the statutory consequence is abatement to allow additional discovery, not revocation of tolling. *See id*. § 74.052(b); *supra* pp. 12–13.

Although we hold that an incomplete or erroneous medical authorization form is still an authorization form for tolling purposes, we also acknowledge the possibility that a document proffered as a medical authorization form may be so grossly deficient on its face that it could never genuinely be called "a medical authorization in the form specified by this section." *Id*. § 74.052(a); *cf. Ogletree*, 262 S.W.3d at 323 (Willett, J., concurring) (explaining that an expert report can be so grossly deficient as to be no report at all). No such gross deficiency is alleged here.

Nor do we foreclose the possibility that an erroneous or incomplete authorization form proffered in a bad-faith attempt to mislead the defendant or the court should count as no authorization form at all under the old rule that "fraud vitiates whatever it touches." *See Stonecipher's Est. v. Butts' Est.*, 591 S.W.2d 806, 809 (Tex. 1979) (quoting *Morris v. House*, 32 Tex. 492, 495 (1870)). Such egregious abuses will be rare, we trust, and trial courts are equipped to deal with them—whether by sanctions or by refusing tolling because no genuine authorization form has been served.

For the vast majority of cases, the bright-line rule adopted herein should apply. If the pre-suit notice required by section 74.051 is accompanied by a medical authorization form that resembles the

statutorily required form but that turns out to be erroneous or incomplete, the 75-day tolling period provided by section 74.051(c) remains available.

## IV.

The judgment of the court of appeals is reversed, and the case is remanded to the court of appeals for further proceedings consistent with this opinion.

James D. Blacklock
Justice

**OPINION DELIVERED:** March 8, 2024